## STATE *v*. CALVIN B. NILES.

May Term, 1905.

Present: ROWELL, C. J., TYLER, MUNSON, START, WATSON, HASELTON, and
POWERS, JJ.

Opinion filed January 29, 1906.

*Game   Laws—Hunting   Deer—Resident   and   Nonresident*
*Hunters—Property   in   Game—Police. Power—Constitu-*
*tional Law—Class Legislation—No. 128, Acts 1904.*

Since No. 128, Acts 1904, providing for granting licenses to nonresi-
dent hunters, repeals only such acts and parts of acts as are incon-
sistent therewith, No. 94, Acts 1896, as amended by No. 108, Acts
1898, regulating the hunting of deer, is still in force and binding
both upon residents and nonresidents of this State, except as is
otherwise provided by said Act of 1904.

There is nothing in said Act of 1904 which is inconsistent with said
Act of 1896, except the provision requiring a nonresident hunter
to procure a license, the provision regulating his transporting
deer, and the penalty for his killing more than one deer during the
open season.

The wild game within this State is the absolute property of no person
in particular, but belongs to 'the people of the State in their sov-
ereign, collective capacity.

Each resident of this State has a qualified property in the wild game
therein, namely, the constitutional right to hunt and take the same,
subject to such regulations as the State, in the exercise of its police
power, may impose for the common benefit of all its people; but a
nonresident of this State has no property whatever in such wild
game.

This difference between the respective property rights of residents and
nonresidents of this State in the wild game therein bears a just
relation to, and affords a sufficient basis for, that classification
adopted by our game laws which divides hunters into residents and
nonresidents; and, therefore, the regulations prescribed by No.
128, Acts 1904, governing nonresidents who hunt deer in this State,
which differ, in favor of such nonresidents, from those provisions
of No. 94, Acts 1896, as amended by No. 108, Acts 1898, which

regulate hunting by residents, are within the police power of the
State, and do not render either act unconstitutional.

A nonresident hunter who has legally obtained a license under No.
128, Acts 1904, and has killed a deer under his license, has such a
property in the body of the animal that he may remove it from
the State without having it open to view, tagged, and labelled, as
.required by No. 94, Acts 1896, in the case of a resident hunter.

INFORMATION for being possessed of two wild deer dur-
ing the closed season for hunting, and taking wild deer in vio-
lation of No. 94, Acts 1896, as amended by No. 108, Acts
1898. Heard on demurrer to the information at the March
Term, 1905, Franklin County, *Rowell,* J., presiding. De-
murrer overruled, *pro forma,* and information adjudged suffi-
cient. The respondent excepted.

*Lee S. Tillotson* for the respondent.

No. 128, Acts 1904, does not purport to amend any other
law. It covers the whole subject of hunting deer in this State
by nonresidents, and discriminates in favor of nonresidents.
This discrimination renders both No. 128, Acts 1904, and No.
94, Acts 1896, as amended, unconstitutional. *State* v. *Shed-*
*roi,* 75 Vt. 277; *State* v. *Hoyt,* 71 Vt. 59; *State* v. *Cadigan,*
73 Vt. 251; *State* v. *Insurance Comrs.,* 33 L. R. A. 288; Am.
& Eng. Enc. of Law, 735; Cooley's Const. Lim. (3rd ed.)
186; *Harvey* v. *Com.,* 20 Fed. Rep. 417.

*Warren R. Austin, State's Attorney,* for the State.

The preservation of fish and game is within the police
power of the State. *Lawton* v. *Steele,* 152 U. S. 133; *Can-*
*field* v. *U. S.,* 167 U. S. 518.

The difference in the regulations governing resident and
nonresident hunters does not amount to an unconstitutional

discrimination, if such classification is a just one.   165 U. S.
165; *State* v. *Hoyt,* 71 Vt. 59; *State* v. *Cadigan,* 73 Vt. 245.

START, J.   The respondent demurs to the information
wherein he is charged with the offence of having in his pos-
session two wild deer during the closed season for hunting,
and with taking wild deer, contrary to the provisions of No.
94 of the Acts of 1896 as amended by No. 108 of the Acts of
1898, and insists that by No. 128 of the Acts of 1904 non-
residents. of this State are exempt from the penalties provided
for by the Acts of 1896, and that he is thereby discriminated
against in contravention of his rights under the fourteenth
amendment to the Constitution of the United States.   He
claims that, by No. 128 of the Acts of 1904, a resident of this
State is unlawfully discriminated against, in that he is by the
Act of 1896, as amended by No. 108 of the Acts of 1898, pro-
hibited from killing or having in his possession a deer during
the closed season for hunting; that for killing or having in his
possession, during the open season more than one deer he sub-
jects himself to a fine of one hundred dollars; that he is pro-
hibited from transporting a deer during the open season with-
out its being open to view, tagged, and plainly labelled with
the name of the owner thereof, and accompanied by him; that
he is prohibited, during the open season, from hunting, de-
stroying, or capturing deer with a dog or dog kind, by the aid
or use of a jack or artificial light, by the method known as
crusting, while the deer are yarded, or by the use or assistance
of any snare, trap, or salt-lick; and that the possession of a
deer except in the open season, is presumptive evidence that
he is guilty of a violation of the provisions of section one of
the Act of 1896, while a nonresident is, by No. 128 of the
Acts of 1904, exempt from all of these prohibitions and re-
quirements.   These claims, as a whole, are not sound.

Section one of the Act of 1896 provides that no person, except in the open season, shall pursue, take, or kill a wild deer, or have in his possession a wild deer or part thereof, so taken or killed, and that the possession of a deer or any part thereof, except in the open season, shall be presumptive evidence that the person having it in his possession is guilty of a violation of the provisions of the section. The Act of 1904 repeals only such acts and parts of acts as are inconsistent therewith. The Act of 1896, as amended by the Act of 1898, is still in force and binding upon a nonresident as well as a resident of this State, except as is otherwise provided by the Act of 1904.

There is nothing in the Act of 1904 that is inconsistent with the Act of 1896, except the provisions relating to the transporting of deer, the penalty for killing more than one deer, and the provision requiring a nonresident to procure a license. That part of the Act of 1896, as amended by the Act of 1898, which prohibits the killing or possession of a deer during the closed season for hunting, or, at any time, the hunting of deer with a dog or dog kind, by the aid or use of a jack or artificial light, by methods known as crusting, while deer are yarded, or by the use or assistance of any snare, trap, or salt-lick, remains in force; and for a violation of any of these provisions residents and nonresidents are alike punishable under the Act of 1896.

A nonresident's license to hunt in this State, except as is otherwise provided by the Act of 1904, must be taken to be a license to do so in conformity to the general game laws of this State; and a nonresident who has in his possession, during the closed season, a deer, subjects himself to the penalty provided by the Act of 1896. A nonresident being punishable, under the Act of 1896, for having a deer in his possession during the

closed season, is not exempt from the presumption, therein provided for, which arises from such possession; and in prosecutions against him under the Act of 1896 for having such possession, he must overcome this presumption to the same extent that a resident is required to in a like case.

The Act of 1904 does not impose the same penalty upon a nonresident for killing more than one deer during the open season that is by the Act of 1896 imposed upon a resident for doing the same act; for that, a nonresident may be fined not less than twenty-five nor more than one hundred dollars, while a resident must pay a fine of one hundred dollars. Also, a nonresident may transport the carcass of one deer by having a coupon, furnished by the Fish and Game Commissioners, attached thereto, while a resident to do so must have the carcass open to view, tagged, and plainly labelled with the name of the owner thereof, and accompanied by him. These regulations for admitting nonresidents, on payment of a license fee, to this State for the purpose of hunting, which differ from those regulating hunting by residents of this State, who are not required to procure a license, are within the police power of the State, and do not render either act non-enforceable.

A resident is not by the acts denied his constitutional right to hunt deer under legislative regulations as to the time for doing so and the number of deer that may be killed by one person; and we can not say that these regulations are oppressive or unreasonable. These regulations apply to a nonresident as well as a resident hunter. There is nothing in the Act of 1904, which provides for licensing of a nonresident hunter, that takes away the right of a resident to hunt. The regulations respecting the licensing of a nonresident hunter, which differ from those provided for a resident, relate to the license fee, the punishment, and the transportation of deer. If these

discriminate against a resident, they are discriminations which are within the police power of the Legislature to make.*

No person can acquire an absolute property in animals *ferae naturae.* The ownership in such animals is at most a qualified one. They belong to no persons in particular. As Blackstone says, 2 Com. 394: "A man may, lastly, have a qualified property in animals *ferae naturae* * * *; that is he may have the privilege of hunting, taking, and killing them, in exclusion of other persons. Here he has a transient property in these animals, usually called game, so long as they continue within his liberty; and may restrain any stranger from taking them therein; but the instant they depart into any other liberty, this qualified property ceases." It follows that this qualified property belongs to all the people of the State in common, and, as Blackstone further says * * *, "that this natural right, * * * may be restrained by positive laws enacted for reasons of state or for the supposed benefit of the community."

Mr. Justice White, in *Geer* v. *State of Connecticut,* 161 U. S. 519, Law. ed., Book 40, 793, remarks that: "The right to preserve game flows from the undoubted existence in the state of a police power to that end; that in most of the states laws have been passed for the protection and preservation of game, and that the power of the state to so legislate has not been questioned." He further says, * * * "that the power or control lodged in the state, resulting from this common ownership, is to be exercised like all other powers of government as a trust for the benefit of the people, and not as a prerogative for the advantage of the government as distinct from the people, or for the benefit of private individuals as distinguished from the public good." He quotes from *Ex parte Maier,* 103 Cal. 476, where it is held that the wild game within a state belongs to the people in their collective sovereign capacity. In

*State* v. *Rodman,* 58 Minn. 393, the Court said in respect to the ownership of wild animals, that such ownership is in the state, not as proprietor, but in its sovereign capacity, as the representative and for the benefit of all its people in common. This is the doctrine of *American Express Co.* v. *People,* 133 Ill. 469, 23 Am. St. R. 641, where it is held that the ownership of game is in the people of the state and that the power to legislate on this subject is part of the police power inherent in each state.   See *Phelps* v. *Racey,* 60 N. Y. 10, 19 Am. R. 140; *Wheatley* v. *Harris,* 70 Am. Dec. 259.

The law upon this subject is concisely stated in *Magner* v. *People,* 97 Ill. 333 : "The ownership being in the people of the state,—the repository of the sovereign authority,—and no individual having any property rights to be affected, it necessarily results that the legislature, as the representative of the people of the state, may withhold or grant to individuals the right to hunt and kill game, or qualify and restrict it, as, in the opinion of its members, will best subserve the public welfare." This doctrine is fully stated in *Payne* v. *Sheets,* 75 Vt. 335, 55 Atl. 656.

In *State* v. *Norton,* 45 Vt. 258, the Court said: "The numerous statutes which have been passed for the protection of game and fish have been deemed necessary to the beneficial enjoyment of the constitutional right, and the Court will not hold such laws unconstitutional until it is clearly shown that they are so prohibitory as to virtually deprive the inhabitants of the right secured to them by the constitution."   In *State* v. *Theriault,* 70 Vt. 617, 41 Atl. 1030, a statute which authorized the Fish and Game Commissioners, when they placed fish in a pond or stream, to prohibit fishing therein, or in specified portions thereof, for a term of years, and provided that waters when so stocked should be treated as public waters, etc., was

held not unconstitutional, but as a reasonable exercise of the police power of the state.

The granting of licenses by the Fish and Game Commissioners to nonresident hunters to kill deer within this State is within the proper exercise of the police power of the State, provided it does not discriminate in their favor and against resident hunters, without classification. Classification is essential to discrimination, and there can be no classification unless there is some difference between resident and nonresident hunters that bears a just relation to the classification. In this case a difference is found in the fact that the resident hunter has a qualified property in the deer, while the nonresident has no property whatever therein.

There is a clear discrimination in the law, as has been shown, in favor of nonresidents in respect to having the carcass exposed to view, labelling, etc. But we think that a nonresident person, having paid for and obtained a license and having killed a deer under his license, acquires such a property in the body of the animal that it may be removed from the State without its being open to view, tagged, labelled, etc. In this respect the act is not unconstitutional.

*Judgment affirmed and cause remanded.*

---

[NOTE.—Judge Start finished his work upon this opinion on the Saturday before his death, which occurred Tuesday, Nov. 7, 1905. From the star the opinion is *Per Curiam.*—REPORTER.]