THE STATE v. ARTHUR KOOCK, Appellant.

Division Two, March 19, 1907.

1. **HUNTER'S LICENSE: In County.** Under section 54 of the Game and Fish law of 1905 (Laws 1905, p. 158, sec. 54), providing that "it shall be unlawful for any person to hunt in this State outside of the county in which he lives without first obtaining a license permitting him to do so," the hunter is not required to have a license to hunt in the county in which he resides, and the killing of game birds in the county by a resident person who has no license to hunt is not an offense.

2. **CRIMINAL STATUTES: Construction.** No guess work or inferences should be indulged in the interpretation of penal statutes. The uniform rule is that such statutes should be strictly construed and not extended or enlarged by judicial construction so as to embrace offenses or persons not plainly within their terms.

Transferred from Kansas City Court of Appeals.

REVERSED.

*W. D. Steele* for appellant.

(1) Appellant insists that there is no law in force in this State that requires him to obtain or take out a hunter's license in order that he may hunt in the county in which he lives and that there is no law prohibiting him from hunting in the county in which he lives without first taking out a license. Neither is there any law fixing a penalty for so doing. Section 54 of the act in question says, "It shall be unlawful for any person after the passage of this act to hunt in this State outside of the county in which he lives without first obtaining a license permitting him or her to do so." Therefore, by clear implication and by the ordinary rules of construction it is lawful to hunt anywhere in the State except as here prohibited in section 54, that is, except outside of the county in which he

lives. (2) Section 61 of the game law provides that "any person who shall hunt in this State without being at the time of said hunting in possession of a license as herein provided, duly issued to him or her, which license shall cover the period in which he or she shall be hunting, or who shall furnish to another person a license issued to him or her, shall be fined not less than twenty-five nor more than one hundred dollars, and costs of prosecution." Now section 54 provides that it shall be unlawful for any person to hunt in this State outside of the county in which he lives, without first obtaining a license. Section 58 provides the manner in which license may be obtained and enumerates those persons entitled to obtain a resident hunters' license, and further provides that owners and tenants of farm lands may hunt on their lands without any license. Section 21 provides that unless specifically restricted the words "herein or hereof" refer to the whole act. (3) Construing the whole act, is it not the obvious intent of the Legislature that any person may hunt in the county in which he lives without first taking out a license; and, second, that owners and tenants of farm lands may hunt on such lands without a license, and that regardless of where such lands are situated? The words "as herein provided," used in section 61, must, by virtue of the express provision of section 21, refer back to sections 54 and 58. Another well-settled rule of construction is that the whole statute must be so construed as to harmonize all its parts, if possible. Following this rule and construing sections 21, 54, 58 and 61 together, we have the following, which is the only construction by which all these sections can be harmonized and is a very reasonable construction, namely: "Any person who shall hunt in this State outside of the county in which he lives without being at the time of said hunting in possession of a hunter's license shall be fined not less than

twenty-five nor more than one hundred dollars, provided that this section shall not apply to owners and tenants of farm lands who may hunt on their own lands without obtaining a license.'' To put any other construction on the statute would be to render section 54 an absolute nullity, in order that a strained construction may be put on section 61. Further, by giving to these several sections the construction that we have attempted we have followed the rule that a law should be so construed that all words of the statute will have effect. (4) A statute should be so construed that effect will be given to all of its provisions. National Bank of Commerce v. Ripley, 161 Mo. 126. When a literal construction of any section will conflict with any other section of a statute or with the scope and manifest intent of the act, it is the duty of the court if possible to harmonize the various provisions and if necessary depart from a literal construction of one or more sections. State ex rel. v. Heman, 70 Mo. 441. All parts of a law must be considered in getting at the full significance of any part of it. State ex rel. v. Marion County Court, 128 Mo. 427. Effect must be given if possible to all of its provisions. Riddick v. Walsh, 15 Mo. 519. All the words of a statute must have effect rather than any part should perish by construction. St. Louis v. Lane, 110 Mo. 254. When it is plain that a particular intention was in the mind of the Legislature, though not precisely expressed, that intention must govern and control the strict letter of the law. State v. King, 44 Mo. 283. The courts if possible should construe a statute so as to avoid conflict between the various sections. City of Westport ex rel. v. Jackson, 69 Mo. App. 148. This being a criminal statute, it must be construed strictly against the State. State v. Balch, 178 Mo. 392.

*C. C. Kelly, Barnett & Barnett* and *J. H. Rodes* for the State.

(1) Hunting in the county in which a party resides without taking out a hunting license under the game law constitutes an offense. Section 58 is the section which authorizes a party to take out a license. There is no provision in section 54 for issuing a license. It does not prescribe the party who issues the license nor the qualifications necessary to obtain a license nor the steps necessary to be taken. But who is entitled to a license and what his application must set forth, the fee to be paid, and the party who is authorized to issue it, are all prescribed by section 58. Section 61, in plain, unambiguous and unequivocal language, says that any person who shall hunt in this State without being at the time of such hunting in possession of a license, as herein provided, duly issued to him or her, shall be fined not less than twenty-five dollars nor more than one hundred dollars. This section is unqualified and prohibits hunting anywhere in the State. Section 58 prescribes who may obtain a license and how it may be obtained, and section 61 is the section that defines the crime of hunting without a license, and when the question is asked, where is it that a person cannot hunt without a license, section 61 gives the answer and responds, in plain, unambiguous language, that a person shall not hunt in this State, that is, anywhere in the State, without being in possession of a license. It is contended that section 54 of the act authorizes a party to hunt in his own county without a license. The section does not so state, but simply states that it is unlawful for any person to hunt in the State outside of the county in which he lives without first obtaining a license permitting him to do so. It does prohibit him from hunting outside of his own county without a license, but does not authorize

him to hunt in his own county, or, in other words, it does not contradict or nullify the provisions of section 61, which, in broad terms, prohibits him from hunting in any county, including his own. These three sections, 54, 61, and 58, must all be construed together as one section, and in fact all the other sections relating to this subject must be read into them. It is a familiar rule of construction of statutes that sections and parts of the statutes, *in pari materia,* are to be treated as if embodied in one section. St. Louis v. Hardware Co., 119 Mo. 45. Let it be understood, once for all, that the license in question is not a county license, but a State license. The party wishing to hunt takes out a license once for all in one county, which permits him to hunt anywhere in the State, and the place where he is to take this license is in his own county. The purpose and function of section 54 is obvious. As there is no provision in the law for a party taking out a license in any county other than his own, it might have been supposed that when a man was outside of his own county, as there was no provision for his taking out a license in the county in which he was a non-resident, that, therefore, he could hunt in such county without any license at all. It might have been supposed that these licenses were mere county licenses and that a man was required to take out a license in his own county, but in no other county, and, being not required to take out licenses in another county, it would not be wrong to hunt in any other county without a license. But section 54 simply settles this question by stating that, notwithstanding there is no provision for a man taking out a license in any other county than his own, yet he cannot hunt in such other county without first taking out a license under section 58 in the county where he resides. We call the court's especial attention to the difference of the language in section 61 and in section 54 with regard to taking out a license.

In section 61 it says that a person shall not hunt in the State without being at the time of such hunting in possession of a license as herein provided. Mark the words, ''without being in possession of a license.'' Section 54 does not say that they shall not hunt outside of their county without being in possession of a license, but says that it shall be unlawful for a person to hunt in the State outside of the county in which he lives without first obtaining a license permitting him to do so, that is, without first going to his own county and obtaning a license from the clerk there. He must first go to the clerk of his own county and get his license, that is, obtain it, before he can go to another county to hunt. And when section 58 is read into section 54, it merely says that it is unlawful for a person to hunt in this State outside of the county in which he lives without first obtaining a license from the county clerk in the county where he resides. It seems to us nothing can be clearer than this. We call especial attention to the fact that it is not true that section 54 is the paramount section in this act which defines the crime. Section 54 does not define the crime, neither does it provide for the taking out of a license. If we were to stop at section 54 no punishment would be provided for any hunting, and if we were to stop with that section no provision would be made for the taking out of a license. It could not be known who could take out a license, what officer should issue it, nor what fee was to be paid. But the section that does provide for a license, and the only section, is section 58, and the section which defines the crime, and the only section, is section 61, which, in plain, unambiguous terms, says that it is unlawful to hunt in the State of Missouri without taking out a license under the provisions of section 58, and prescribes the penalty for a violation of the section. (2) It is a leading maxim in the interpretation of statutes to reject an interpretation which conflicts with the views of the Legislature apparent in

the enactment and leads to such consequences as it would be disrespectful to the Legislature to suppose were designed.  Connor v. Railroad, 59 Mo. 285.  If the position taken by the opposing counsel is correct, then sections 69 and 70 are simply ridiculous, and to put such a construction upon those sections would be disrespectful to the Legislature.  To say that the Legislature meant and intended that a man could go anywhere in his own county and kill as many birds as he saw fit without a license and then could take them to his own home without being in possession of a license would be to simply render the Legislature ridiculous and would be to argue that they intended to do a ridiculous thing.  (3)  It is another well-recognized rule of construction that if a construction be placed upon a particular part of the act which will make it conflict with other parts, then the courts will labor to find the meaning and construction which will reconcile the apparent hostile and conflicting provisions and will seek a construction that will give some meaning to each and every part of the act, so that it will all stand together and all be effective and so that no part of it will perish by construction.   St. Louis v. Lane, 110 Mo. 254; Macke v. Byrd, 131 Mo. 682; State ex rel. v. Slover, 126 Mo. 652; Andrew County v. Schell, 135 Mo. 31; State v. Heath, 56 Mo. 231; State v. Heman, 70 Mo. 441; Cole v. Skrainka, 105 Mo. 303; Cain v. Railroad, 112 Mo. 34; Nat. Bank of Commerce v. Ripley, 161 Mo. 126.  The policy of the courts is to seek for a construction which will sustain the law and perpetuate the purpose which was intended by the Legislature.  St. Joseph v. Landis, 54 Mo. App. 315.  (4)  If section 54 means what the defendant in this case claims it does, then it is in conflict, as has been urged, with the provisions of section 61, and especially with the provisions of sections 69 and 70.  If it be true that section 54 conflicts with these other

sections, then it must be disregarded, because it is a familiar rule of construction of statutes that if there be an irreconcilable conflict or repugnance between the provisions of an act, or between the different sections thereof, the last in order will stand and the others, which cannot stand with them, go to the ground. City of Westport v. Dickson, 69 Mo. App. 153; Brown v. Commissioners, 21 Pa. St. 42; Herrington v. Trustee, 10 Wend. 553; 25 Am. and Eng. Ency. Law (1 Ed.), 311. (5) But if there was still any doubt on this question, it would be removed by the proviso in section 58, which reads as follows: "Provided, this section shall not apply to owners and tenants of farm lands who may hunt on their own lands without obtaining a hunting license." Under the maxim, *expressio unius est exclusio alterius*," everything else is excluded from the operation of this proviso except what is contained therein, that is, hunting is prohibited everywhere in this State without a license except in the territory described in the proviso. State v. Fisher, 119 Mo. 351; Brockett v. Railroad, 14 Pa. St. 241; Sutherland on Statutory Const., sec. 328; Tyson v. Britton, 6 Tex. 222; Roberts v. Yarboro, 41 Tex. 450; United States v. Dickson, 15 Peters 165. We want to impress upon the court the fact that this proviso is found in section 58, being the section, and the only section, which provides for the taking out of a license by a resident of the State. (6) But we understand that it is contended that these general rules of construction cannot be made applicable to a criminal or penal statute because there is another rule of construction that penal statutes must be strictly construed. We insist, however, that while there is more strictness in construing a penal statute than a mere remedial one, yet the above rules of construction apply in full force to them as well as to other statutes; that in construing penal statutes the courts must try to give a construction that will give mean-

ing to all parts of the act and a meaning which will effectuate the purpose of the act. Black, Int. Stat., p. 288; State v. Sibley, 131 Mo. 525; State v. Woodward, 182 Mo. 391; State v. Tower, 185 Mo. 79.

FOX, P. J.—This cause was certified to this court by the Kansas City Court of Appeals for the reason that it was in conflict with the decision of the St. Louis Court of Appeals in Ex parte Helton, 117 Mo. App. 609.

The defendant was indicted, tried and convicted for hunting without a license in the county of Pettis, being the county in which the defendant resided. This prosecution is predicated upon an act of the General Assembly relative to the preservation, propagation and protection of game animals, birds and fish. This cause was submitted to the court sitting as a jury upon the following agreed statement of facts:

"It is hereby agreed and stipulated between the State and the defendant that the following are the facts in this case and that this cause may be submitted to the court and determined without a jury upon this agreed statement of facts:

"1. It is agreed that the defendant did on the 31st day of October, 1905, at Pettis county, Missouri, hunt game birds, to-wit, one wild duck, on lands not then and there farm lands owned by defendant and then and there not held by him as a tenant, without him being then and there at the time of such hunting, injuring, killing and destroying said game bird aforesaid in possession of a hunter's license duly issued to him covering the period in which said hunting was done permitting him to do so and without him having any license whatever authorizing him to hunt in the State of Missouri.

"2. It is further admitted that at the time of said hunting the said Arthur Koock was a resident of Pettis county, Missouri, and that he is now a resident of Pet-

tis county, Missouri, and has been for more than one year last past and has been for more than one year previous to the time of said hunting."

Upon this statement of facts the court declared the law as follows:

"The court, sitting as a jury, at the request of the prosecution, declares the law to be that if the court, sitting as a jury, shall believe from the evidence beyond a reasonable doubt that the defendant, Arthur Koock, in Pettis county, Missouri, on the 31st day of October, 1905, did hunt wild ducks or did injure, kill or destroy a game bird, to-wit, one wild duck, on lands not then and there farm lands owned by the said Arthur Koock or then and there held by the said Arthur Koock as a tenant, and if the court, sitting as a jury, further finds and believes from the evidence that at the time of such hunting, killing, injuring and destroying of the game bird aforesaid the said Arthur Koock was not then and there in possession of a hunter's license then and there duly issued to him, the said Arthur Koock, covering the period in which he, the said Arthur Koock, was so hunting, killing, injuring and destroying the game birds aforesaid, then you will find the defendant guilty and assess his punishment at a fine of not less than twenty-five dollars nor more than one hundred dollars, and the fact that the defendant was hunting in the county of which he was a resident, if the court believe he was so hunting in his own county, constitutes no defense to this prosecution." To which action of the court in giving said instruction the defendant objected and excepted at the time.

Whereupon, the defendant requested the court to give the following instruction:

"The defendant asks the court to declare the law to be that he had a right under the law to hunt in the county in which he resided without taking out a hunt-

er's license and that for that reason he is not guilty.'' Which request was refused, and to the action of the court in refusing to give said instruction the defendant objected and excepted at the time.

The cause being submitted to the court upon the agreed statement of facts and the instruction given as requested by the State, the court found the issues for the State and found the defendant guilty and assessed his punishment at a fine of $25. A timely motion for new trial was filed and by the court overruled. Judgment was rendered in conformity to the verdict and from this judgment the defendant prosecuted his appeal to the Kansas City Court of Appeals, and that court, as heretofore indicated, certified the cause to this court, and the record is now before us for consideration.

## OPINION.

The instruction given for the State and the one requested by the defendant, which was refused by the court, plainly indicate the only proposition presented to this court for its solution, that is, whether or not the defendant had a right under the provisions of the act, as heretofore indicated, to hunt in the county in which he resided, without taking out a hunter's license as required by the provisions of the act.

The legal proposition involved in this controversy has received by the Courts of Appeals in St. Louis and Kansas City very careful consideration. When the question was first presented to the St. Louis Court of Appeals it was held that it was essential for any person desiring to hunt, either in the county in which he resided or in any other county in the State, to procure a license authorizing him to do so. Upon a reconsideration of the question by that court it was expressly ruled that it was not essential for a person who desired to hunt in the county in which he resided to obtain any

license authorizing him to do so. [Ex parte Helton, 117 Mo. App. 609.] In the case at bar the Kansas City Court of Appeals, by a majority opinion, ruled that the defendant was guilty of a violation of the provisions of the act by hunting in the county in which he resided without taking out a hunter's license authorizing him to do so, ELLISON, J., dissenting from the views expressed by a majority of that court.

The leading and crucial question presented to the St. Louis and Kansas City Courts of Appeals involved the proper construction of section 54 of the game law (Laws 1905, p. 158), as herein indicated. Section 54 provides that, "It shall be unlawful for any person, after the passage of this act, to hunt in this State outside of the county in which he lives without first obtaining a license permitting him or her to do so. Such license shall be dated when issued and shall authorize the person named therein to hunt during that year, and then only subject to the regulations and restrictions provided by law."

The proposition as to the proper construction of the provisions of section 54, in view of other numerous provisions in certain sections of the act, have been ably discussed and exhaustively treated by the St. Louis and Kansas City Courts of Appeals, as well as by ELLISON, J., in his dissenting opinion to the views expressed by a majority of the court of the Kansas City Court of Appeals. We have read with a high degree of interest the discussion of this proposition by the Courts of Appeals and have carefully considered the views expressed, as well as the conclusions reached, and it can serve no good purpose either to the Bench or Bar to review in detail the views as expressed by those courts. We shall be contented with announcing our conclusions upon the proposition as disclosed by the record.

One of the leading and cardinal principles in the rules of construction of statutes is to arrive at the in-

tent of the lawmaking power.  In our opinion, after a most careful consideration of all the provisions of the act now under discussion, the Legislature never intended that a hunter's license should first be obtained in order to authorize a person to hunt in the county in which he resided.  No guess work or inferences should be indulged in the interpretation of a penal statute. The uniform rule is that such statutes should be strictly construed and not extended or enlarged by judicial construction so as to embrace offenses and persons not plainly within their terms.   [State v. Reid, 125 Mo. 43; State v. Bryant, 90 Mo. 534; Sedgwick on Construction of Statutory Law, 280; Fusz v. Spaunhorst, 67 Mo. 256; Kritzer v. Woodson, 19 Mo. 327; Howell v. Stewart, 54 Mo. 400; United States v. Morris, 14 Peters 464; Bishop on Statutory Crimes (2 Ed.), secs. 196, 227.]

We concur in the result of the conclusions reached by the St. Louis Court of Appeals in Ex parte Helton, supra, in which the same proposition was involved as in the case at bar.  We have thus indicated our views upon the legal propositions disclosed by the record, which results in the conclusion that the judgment of the trial court should be reversed and the defendant discharged, and it is so ordered.

All concur.