NOAH HARPER, *Plaintiff in Error,* v. JOHN P. GALLOWAY, SHERIFF, *Defendant in Error.*

1. Where a person is held in custody under a judgment of conviction, and the judgment is assailed on the ground that it is not merely erroneous but void because it is based on a charge made under an invalid provision of a statute, and the charge constitutes no offense under the laws of the State, the validity of the statutory provision defining the offense may be determined in *habeas corpus* proceedings; and if the statute is invalid and the charge constitutes no offense under the laws of the State, the petitioner may be discharged from custody under the charge.

2. If a duly enacted statute contains provisions that are invalid because in conflict with organic law, and such invalid portions may be severed, and the remainder of the statute may

then be made effective for the purpose designed, and will not cause results not intended by the legislature, and it does not appear that the statute would not have been enacted without the invalid portions, the invalid portions of the Act should be disregarded and the valid portions enforced if it can be done to effectuate the legislative intent.

3. Under the Common Law of England, the title to animals *ferae naturae* or game is in the sovereign for the use and benefit of the people, the killing or taking and use of the game being subject to governmental control and regulation for the general good.

4. The power to control and regulate the killing and use of game was vested in the colonial governments of America and passed with the title to game in its natural condition to the several States as they became sovereigns, for the use and benefit of all the people of the States respectively, subject to any provision of the Federal constitution that may be applicable to such control and regulation.

5. The constitution of the State does not forbid the passage of special or local laws upon the subject of game, and it contains no express provision relative to game; therefore the legislature may by a duly enacted law make any provision within its discretion for the preservation and conservation of the game in the State for the use and benefit of the people of the State, by regulating the taking or killing and use of certain or all kinds of game in any part of the State and during any periods, where such laws do not deny to any one having rights in the premises the due process of law or the equal protection of the laws that are guaranteed to all persons by the State and Federal constitutions.

6. In exercising its power and discretion to control and regulate the subject of hunting game, the legislature may enact any law it may deem advisable, but regulations should affect alike all persons similarly situated and conditioned with reference to the subject regulated.

7. Classifications of persons may be made in connection with regulations for the protection of game, but such classifica-

tions should have some just relation to real differences with reference to the subject regulated, and should not be unjustly discriminatory or merely arbitrary. If this rule is not observed, classifications of persons in connection with the regulation of the hunting of game may deny to some residents of the State the equal protection of the laws.

8. The discretion of the legislature in classifying those who are to be affected by a regulation for the protection of game will not be disturbed by the courts where the classification has some just, fair and practical basis in real differences with reference to the subject regulated, and all doubts will be resolved in favor of the validity of a statute.

9. When a statute designed for the protection of game, by its plain terms excludes from its benefits a portion of the residents of the State, or imposes upon some of the residents of the State burdens not put upon other residents of the State with reference to the subject regulated, and there appear to be no real differences in conditions with reference to the regulation to fairly justify the classification as made, the statute may in effect deny to residents of the State the equal protection of the laws in violation of the Fourteenth Amendment of the Federal Constitution.

10. The provisions of Section 8 of Chapter 6005 Acts of 1909, that require of residents of the State of Florida who are not residents of Marion county, a previous notice of intention to hunt and the payment of a special license tax for the privilege of hunting game in Marion county, while no notice or license tax is required of residents of Marion county, are in effect a denial to the residents of the State who are not residents of Marion county the equal protection of the laws of the land in violation of the Fourteenth Amendment of the Constitution to the United States, and are inoperative as to residents of this State.

11. The constitution contains no express limitation upon the power of the legislature to provide for taxes on licenses; but such power should not be so exercised as to deprive any person of property without due process of law, or so as to deny to any person the equal protection of the laws.

17—Vol. 58

12. The legislature may enact special or local laws within its discretion for the protection of game in the State, and by valid general laws may prescribe punishments for violations of the special or local laws, so as to avoid any real or apparent conflict with the constitutional provision that all laws "for the punishment of crime or misdemeanor" "shall be general and of uniform operation throughout the State."

13. The provisions of Section 11 of Chapter 6005, relating to the disposition of fines collected, are controlled by section 9 of Article 16 of the constitution, as amended, which requires fines collected to be paid into the fine and forfeiture fund of the county.

This case was decided by the court En Banc.

Writ of Error to the Circuit Court for Marion County.

The facts in the case are stated in the opinion of the court.

*William Hocker*, for Plaintiff in Error;

*Park Trammell*, Attorney General, for the State.

WHITFIELD, C. J.—The plaintiff in error, a resident of Lake county, Florida, was convicted in the county judge's court of Marion county for a violation of section 8, and was sentenced to imprisonment under section 10, of chapter 6005, Acts of 1909, being a local game law for Marion county. On writ of *habeas corpus* before the judge of the Fifth Judicial Circuit the petitioner was remanded to the custody of the sheriff under the sentence and commitment of the county judge's court. The circuit judge allowed a writ of error, and it is contended here that the Act under which the conviction was had is invalid because (1) it denies to citizens of Florida the equal protection of the

laws, contrary to the guaranty of the fourteenth amendment of the constitution of the United States; and (2) it violates the provisions of the State constitution that "the legislature shall not pass special or local laws * * * for the punishment of crime or misdemeanor;" that such "laws shall be general and of uniform operation throughout the State;" and that "the legislature shall provide for a uniform and equal rate of taxation."

Where a person is held in custody under a judgment of conviction, and the judgment is assailed on the ground that it is not merely erroneous but void because it is based on a charge made under an invalid provision of a statute, and the charge constitutes no offense under the laws of the State, the validity of the statutory provision defining the offense may be determined in *habeas corpus* proceedings; and if the statute is invalid and the charge constitutes no offense under the laws of the State, the petitioner may be discharged from custody under the charge.  Ex parte Knight, 52 Fla. 144, 41 South. Rep. 786, 120 Am. St. Rep. 191; Hays v. Walker, 54 Fla. 163, 44 South. Rep. 747; Ex parte Bailey, 39 Fla. 734, 23 South. Rep. 552; Hardee v. Brown, 56 Fla. 377, 47 South. Rep. 834.

It is the duty of the courts to enforce valid provisions of a statute; but a statute that is clearly in conflict with organic law should not be enforced.  If a duly enacted statute contains provisions that are invalid because in conflict with organic law, and such invalid portions may be severed, and the remainder of the statute may then be made effective for the purpose designed, and will not cause results not intended by the Legislature, and it does not appear that the statute would not have been enacted without the invalid portions, the invalid portions of the Act should be disregarded and the valid portions enforced if it can be done to effectuate the legislative intent.  State v. Atlantic Coast Line R. Co., 56 Fla. 617, 47 South. Rep.

969; State v. Tampa Waterworks Co., 56 Fla. 858, 47 South. Rep. 358, 19 L. R. A. (N. S.) 183; El Paso & N. E. Ry. Co. v. Gutierrez, 215 U. S. 87, 30 Sup. Ct. Rep. 21. It is presumed that the lawmaking power intended a valid, constitutional enactment. Only the valid legislative in-tent becomes the law to be enforced by the courts. The legislature is presumed to act within its powers, and its lawmaking discretion within its powers is not subject to review by the courts.

Under the common law of England the title to animals *ferae naturae* or game is in the sovereign for the use and benefit of the people, the killing or taking and use of the game being subject to governmental control and regula-tion for the general good. The power to control and regu-late the killing and use of game was vested in the colonial governments of America and passed with the title to game in its natural condition to the several States as they be-came sovereigns, for the use and benefit of all the people of the States respectively, subject to any provision of the Federal constitution that may be applicable to such con-trol and regulation.

The constitution of the State does not forbid the pass-age of special or local laws upon the subject of game, and it contains no express provision relative to game; there-fore the legislature may by a duly enacted law make any provision within its discretion for the preservation and conservation of the game in the State for the use and ben-efit of the people of the State, by regulating the taking or killing and use of certain or all kinds of game in any part of the State and during any periods, where such laws do not deny to any one having rights in the premises the due process of law or the equal protection of the laws that are guaranteed to all persons by the State and Federal con-stitutions. See Blackstone's Com. 394, 410; Freund on Police Power, Chap. 419; Geer v. Connecticut, 161 U. S.

519, 16 Sup. Ct. Rep. 600; 3 Cyc. 306; 19 Cyc. 1006; Bettenhaus v. Johnson, 92 Wis. 588, 66 N. W. Rep. 805, 32 L. R. A. 380; State v. Nergaard, 124 Wis, 414, 102 N. W. Rep. 899; State v. Rodman, 58 Minn. 393, text 400, 59 N. W. Rep. 1098; Manger v. People, 97 Ill. 320; State v. Niles, 78 Vt. 266, 62 Atl. Rep. 795, 112 Am. St. Rep. 917; Ex parte Kenneke, 136 Cal. 527, 69 Pac. Rep. 261, 89 Am. St. Rep. 177; State v. Snowman, 94 Me. 99, 46 Atl. Rep. 815, 50 L. R. A. 544, 80 Am. St. Rep. 380; Ex parte Maier, 103 Cal. 476, 37 Pac. Rep. 402, 42 Am. St. Rep. 129, text 138; Sherwood v. Stephens, 13 Idaho 399, 90 Pac. Rep. 345; Hayes v. Washington Terr. 2 Wash. Ter., 286, 5 Pac. Rep. 927; Allen v. Wuckoff, 48 N. J. L. 90, 2 Atl. Rep. 657, 57 Am. St. Rep. 548; Stevens v. State, 89 Md. 669, 43 Atl. Rep. 929; 11 Current Law, 1471; 9 Current Law, 1364; State v. Koock, 202 Mo. 223, 100 S. W. Rep. 630; Hyde v. State, 155 Ala. 133, 46 South. Rep. 489; State v. Buckingham, .. Miss.., 47 South. Rep. 501, Daniels v. Homer, 139 N. C. 219, 51 S. E. Rep, 992, 3 L. R. A. (N. S.) 997; State v. Hanlon, 77 Ohio, 19, 82 N. E. Rep. 662; People v. Truckee Lumber Co., 116 Cal. 397, 48 Pac. Rep. 374, 39 L. R. A. 581 and notes; People v. Bridges, 142 Ill. 30, 31 N. E. Rep. 115, 16 L. R. A. 684; James v. Wood, 82 Me. 173, 19 Atl. Rep. 160, 8 L. R. A. 448; 21 Central Law Journal 486.

Any special or qualified rights or privileges that, in the absence of legislation on the subject, land owners may have as to game while it is on their lands are protected by the laws of trespass. As to the rights of land owners who are non-residents of the State to be accorded the equal protection of the laws under the statutes for the protection of game, see State v. Mallory, 73 Ark. 236, 83 S. W. Rep. 955, 3 Am. & Eng. Anno. Cas. 852, 67 L. R. A. 773. See also State v. Repp, 104 Iowa, 305, 73 N. W. Rep. 829, 40 L. R. A. 687 and notes; Rexroth v. Coon, 15 R. I. 35,

23 Atl. Rep. 37, 2 Am. St. Rep. 863; 3 Cyc. 307; 5 Current Law 1429.

The power and discretion of the legislature to control and regulate the subject of hunting game is not limited by the organic law, and the subject regulated may be as restricted in manner and extent as the legislature deems advisable; but the regulations should affect alike all persons similarly situated and conditioned with reference to the particular regulations. Classifications of persons may be made in connection with the regulations, but such classifications should have some just relation to real differences with reference to the subject regulated, and should not be unjustly discriminatory or merely arbitrary. If this rule is not observed, classifications of persons in connection with the regulation of the hunting of game may deny to some residents of the State the equal protection of the laws. See Seaboard Air Line Ry. v. Simon, 56 Fla. 545, 47 South. Rep. 1001, 20 L. R. A. (N. S.) 126; King Lumber Co. v. Atlantic Coast Line Ry., 58 Fla. ..., 50 South. Rep. 509; Hayes v. Walker, *supra;* Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 22 Sup. Ct. Rep. 431; State v. Patterson, 50 Fla. 127, 39 South. Rep. 398.

Chapter 6005, Acts of 1909, regulates the killing or taking and use of game in Marion County, by providing between what dates and in what numbers certain game may be killed or taken in that county. By section 8 of the Act residents of the State, but not of Marion county, are required to give three days notice to the game warden and to pay a special license tax to hunt in the county, which notice and special license tax are not required of residents of Marion County. Section 10 of the Act authorizes the imposition of a fine and imprisonment upon any non-resident of the county who hunts game in the county without first giving the required notice and paying

the special license tax.   Section 11 requires all fines col-
lected to "be paid to the Game Warden of said County,
who shall make monthly report to the board of county
commissioners therein."

While there may be no absolute private property right
in game in its natural condition, and while the State may
by statute regulate the use of game in any manner and
to any extent desired by the lawmaking power, yet the
beneficial use of the game in the State belongs to all the
people of the State, and a regulation that unjustly dis-
criminates against any of the people of the State may in
effect be a denial of the equal protection of the laws to
those so unjustly discriminated against.   The legislature
in protecting game may in its discretion limit a statute
in the extent and purpose of its operation, but the regu-
lation must operate upon all persons alike under prac-
tically similar conditions and circumstances.   The dis-
cretion of the legislature in classifying those who are to
be affected by a regulation for the protection of game will
not be disturbed by the courts where the classification has
some just, fair and practical basis in real differences with
reference to the subject regulated and all doubts will be
resolved in favor of the validity of a statute.   See State
v. Sherman, ... Wy. ..., 105 Pac. Rep. 299;  Hays v.
Walker, *supra;*  King Lumber Co. v. Atlantic Coast Line
Ry., *supra.*   But when a statute designed for the protec-
tion of game, by its plain terms excludes from its benefits
a portion of the residents of the State, or imposes upon
some of the residents of the State burdens not put upon
other residents of the State with reference to the subject
regulated, and there appear to be no real differences in
conditions with reference to the regulation to fairly
justify the classification as made, the statute may in
effect deny to residents of the State the equal protection
of the laws in violation of the fourteenth amendment of

the Federal constitution. See Ex parte Sohncke, 148 Cal. 262, 82 Pac. Rep. 956, 2 L. R. A. (N. S.) 813, 113 Am. St. Rep. 236, 7 Am. & Eng. Anno. Cas. 475; Seaboard Air Line Ry. v. Simon, *supra.* This appears to be the policy of the general fish and game laws of the State, Chaps. 651, 3753, General Statutes of 1906.

Section 8 of Chapter 6005 requires of residents of the State who are not residents of Marion County a previous notice of intention to hunt and the payment of a special license tax for the privilege of hunting game in Marion County, while no notice or license tax is required of residents of Marion County. As the residents of all the counties of the State have a qualified but beneficial interest in the game in the State, it does not appear that the classification made has any just basis in real differences of conditions. The classification is not made upon the basis of tax payers of the county who may bear the burden of local regulation, even if that would be sufficient in a regulation of this character; but the classification is based upon mere residence in the county, and imposes a burden upon residents of other counties of the State not put upon residents of Marion County, while all the residents of the State have some interest in the subject regulated.

This classification clearly is unjust if not arbitrary. Residents of Marion County may hunt in other counties of the State without giving notice or paying a license tax, but residents of other counties of the State may not hunt in Marion County without first giving three days' notice and paying the license tax. The burden put upon residents of the State who do not reside in Marion County is more onerous than that put upon non-residents of the State.

The unjust discrimination against residents of other counties of the State who have rights as to the game in the State as imposed by section 8 of the Act is in effect a

denial to the residents of the State who are not residents of Marion County the equal protection of the laws of the land, and such section 8 is inoperative as to residents of this State. State v. Higgins, 51 S. C. 51, 28 S. E. Rep. 15, 38 L. R. A. 561. See also in re Ah Chong, 2 Fed. Rep. 733, 6 Sawy. 451; Ex parte Knapp, 127 Cal. 101, 59 Pac. Rep. 315. In the case of Commonwealth v. Hilton, 174 Mass. 29, 54 N. E. Rep. 362, 45 L. R. A. 475, the discrimination held legal was as to taking fish for sale and not for family use.

Section 1 of Article 9 of the State constitution requires a uniform and equal rate of taxation, and is clearly not applicable to the license fees required of non-residents. The constitution contains no express limitation upon the power of the legislature to provide for taxes on licenses; but such power should not be so exercised as to deprive any person of property without due process of law, or so as to deny to any person the equal protection of the laws. Hardee v. Brown, 56 Fla. 377, 47 South. Rep. 834; Howland v. State ex rel. 56 Fla. 422, 47 South. Rep. 963. See also State v. Poole, 93 Minn. 148, 100 N. W. Rep. 647, 3 Am. & Eng. Anno. Cas. 12, and notes as to punishments for violation of game laws.

The legislature may enact special or local laws within its discretion for the protection of game in the State, and by valid general laws may prescribe punishments for violations of the special or local laws, so as to avoid any real or apparent conflict with the constitutional provision that all laws "for the punishment of crime or misdemeanor" "shall be general and of uniform operation throughout the State." Under this organic mandate such provisions as are contained in section 10 of Chapter 6005 should be omitted from local laws. See Wolf v. Humbolst Co., ... Nev. ..., 105 Pac. Rep. 286.

The provisions of section 11 of the Act, relating to the

disposition of fines collected, are controlled by section 9 of Article 16 of the constitution, as amended, which requires fines collected to be paid into the fine and forfeiture fund of the county.

Sections 8, 10 and 11 of Chapter 6005, or such portions of said sections as may conflict with organic law, may be eliminated or disregarded without vitally affecting the regulations contained in other sections of the Act and without causing results, as to the main purpose of the statute, contrary to the intention of the lawmakers. As it cannot be said the Act would not have been passed without sections 8, 10 and 11, the remaining sections may stand as against the attack here made on the statute. See State v. Atlantic Coast Line Ry. Co., *supra;* City of Tampa v. Salmonson, 35 Fla. 446, 17 South. Rep. 481.

The subject regulated by the statute is within the authority and discretion of the lawmaking power, but the classification of persons affected by the regulation is such that residents of the State who do not reside in Marion County are discriminated against in the regulation of a subject as to which all the residents of the State have some interest; and the discrimination is apparently not founded upon any real differences in conditions with reference to the subject regulated. Such discrimination is therefore unjust and in effect denies to the residents of the State who do not reside in Marion County, among them being the petitioner, the equal protection of the laws of the land.

The section of the statute for the violation of which the imprisonment of the petitioner was adjudged is therefore invalid and inoperative as to residents of this State; and as the charge upon which the conviction was had constitutes no offense under the laws of the State, the sentence and commitment of the County Judge's Court are void. The judgment of the Circuit Court remanding the peti-

tioner to the custody of the sheriff under the sentence and commitment of the County Judge's Court is reversed, and the cause is remanded with directions that the petitioner be discharged from custody under such sentence and commitment.

SHACKLEFORD, COCKRELL, HOCKER and PARKHILL, JJ., concur.

TAYLOR, J., absent on account of illness, concurred in the opinion as prepared.

PARKHILL, J., (concurring).

The qualified property which may exist in animals *ferae naturae* belongs to all the people of the State in their *collective* sovereign capacity. Ex parte Maier, 103 Cal. 476, 42 Am. St. Rep. 129, 37 Pac. Rep. 402; State v. Niles, 78 Vt. 266, 62 Atl. Rep. 795; State v. Rodman, 58 Minn. 393, 59 N. W. Rep. 1098. This being so, the provisions of the act in question that forbid people of the State who do not reside in Marion County to hunt game in the County without first giving three days' notice and paying a special license tax deny to them the equal protection of the laws, because they place burdens upon a portion of the people who have a qualified property in the wild game that is not borne by other people of the State similarly situated. State v. Higgins, 51 S. C. 51, 28 S. E. Rep. 15, 38 L. R. A. 561. The petitioner should be discharged.