S. D. McCREARY, Chief of Police, City of Miami, v. STATE, *ex rel.* Joseph H. Tyser.

165 So. 657.
Division B.
Opinion Filed February 7, 1936.

*J. W. Watson, Jr., Abe Archonovitz* and *W. W. Charles,* for Plaintiff in Error;

*G. A. Worley,* for Defendant in Error.

BUFORD, J.—The writ of error brings for review discharging petitioner in habeas corpus proceedings.

Petitioner was arrested by the police officers of the City of Miami on a warrant charging him with violation of ordinance No. 1200 passed and adopted by the City Commission of Miami on December 12th, 1934. Section 1 of the ordinance provides as follows:

"Section 1. For the purpose of properly interpreting this ordinance, an Itinerant Retail or Wholesale Merchant or Vendor, as referred to in this ordinance, shall mean and

include, and shall be construed to mean and include all persons, firms or corporations, both principal and agents, who have operated or may operate any seasonal, temporary or transient business, display or vehicle for a period of less than one full calendar year in the City of Miami, Florida, or who have not heretofore engaged in any business or profession in the City of Miami for a period less than one full calendar year, immediately preceding application for license by selling or serving goods, edibles, wares, beverages, merchandise or any other commodity or service thereto appertaining, and who for the purpose of carrying on business, or any part or service thereto appertaining, occupies, leases, hires or makes use of real estate, building, room, space, structure, vehicle or any private or public property for the sale, exhibition or delivery of such goods, edibles, wares, beverages, merchandise, or any other commodity or service thereto appertaining, and the persons, firms and corporations so engaged shall not be relieved from the full provisions of this ordinance, by reason of association with any local citizen, dealer, trader, broker, merchant, utility or auctioneer, or by conducting such seasonal, temporary or transient business exhibition or display for a period of less than one calendar year in connection with or as part of the business, exhibition of, or in the name of any local citizen, dealer, trader, broker, exhibitor, merchant or auctioneer, or by the employment of any other subterfuge to evade the provisions and intent of this itinerant ordinance."

Section 2 of the ordinance provides, in part, as follows:

"It shall hereafter be unlawful for an Itinerant Vendor or Itinerant Merchant, as defined in the preceding section, to exhibit or offer for sale or sell for himself, or for others, at any definite or fixed place of business any goods, wares, merchandise, edibles or beverages in the City of Miami, without first obtaining a license as herein provided:"

Then follows paragraphs (a), (b), (c), (d) and (e) of Section 2 which are not material to the questions involved here.

Paragraph (f) of Section 2 is as follows:

"(f) Each Itinerant Vendor or Itinerant Merchant shall, before receiving a license to transact business in the City of Miami, execute a good and sufficient surety bond in the sum of One Thousand ($1,000.00) Dollars, signed by the said Itinerant Vendor or Itinerant Merchant as principal, and a surety company or corporation organized and existing under the laws of the State of Florida and authorized to do business in the State of Florida; which bond is to be approved by the City Attorney, and shall be made payable to the City Manager of the City of Miami, Florida, and his successors in office, for the use and benefit of any person, or persons, entitled thereto, and conditioned that the principal and the surety shall pay all personal property taxes that shall be assessed against the Itinerant Vendor or Itinerant Merchant and/or against his, its or their stock of merchandise or other personal property used by him in his business during the year immediately following the date of the issuance of a license to him; also on condition that said Itinerant Vendor or Itinerant Merchant will make and file on or before the tenth (10th) of each month a sworn monthly return for the period of six months to the Director of Finance showing the value of said goods, wares or merchandise of said Itinerant Vendor or Itinerant Merchant; provided, however, that said Itinerant Vendor or Itinerant Merchant shall have the right, in lieu of said bond, to make a cash deposit in an amount equal to $25.00 per thousand, or fraction thereof, of the value of the stock and fixtures being licensed under this ordinance for trans-

acting business, which said cash deposit shall be held by the City of Miami as a trust fund to guarantee the payment of all personal property taxes that shall be assessed against said itinerant vendor or itinerant merchant, or against the stock of merchandise and equipment used by said Itinerant Vendor or Itinerant Merchant in his, or their business during the year immediately following the issuance of the license to such Itinerant Vendor or Itinerant Merchant, and also provided that said Itinerant Vendor or Itinerant Merchant will file on or before the tenth (10th) of each month a sworn monthly return for the period of six months to the Director of Finance showing the value of said goods, wares or merchandise and equipment of said Itinerant Vendor or Itinerant Merchant. As soon as the personal property taxes assessed against said Itinerant Vendor or Itinerant Merchant and against his stock of merchandise and the equipment used by him in business shall be paid, the trust fund shall be surrendered to said Itinerant Vendor or Itinerant Merchant and in the event such Itinerant Vendor or Itinerant Merchant shall fail or refuse to pay such personal property tax assessed against him within one year after the issuance of the license to him or it, and within said year's period, the City Manager shall have the right to apply to much of said trust fund so deposited with the City of Miami, as aforesaid, to the payment of the personal property tax so assessed against said Itinerant Vendor or Itinerant Merchant and his or its stock of merchandise and equipment, as aforesaid, and after paying same shall return the balance, if any, of said trust fund to such Itinerant Vendor or Itinerant Merchant."

Section 3, is, in part, as follows:

"The application for a license permit, as set forth in

Section 2 hereof, shall be filed with the Director of Finance, who shall make such investigation as he deems fit and proper to ascertain and determine the moral character of the applicant and the business integrity of said applicant, and the nature and character of the business sought to be carried on and transacted, and said Director of Finance is hereby authorized to issue à conditional permit pending the investigation and examination of said applicant's application for a license; and should he find the applicant worthy of transacting business in the City of Miami, and the business to be a legal one and not prohibited or restricted by some other ordinance of the City of Miami, the Director of Finance shall thereupon issue to such applicant a license provided that the applicant has complied with all requirements of this ordinance.

"The license fees for Itinerant Retail Merchants, except as hereinafter provided, are hereby fixed and established in such cases in which the value of stock of goods, wares and merchandise carried as follows:

"Not exceeding $500............................................................$ 60.00
More than $500, and not exceeding $1,000............. 125.00
More than $1,000, and not exceeding $2,000..... 175.00
For each additional thousand dollars ($1,000) or
fractional part thereof over two thousand dollars ($2,000) ............................................................ 50.00"

Section 5 provides as follows:

"The license, as provided herein, shall continue as long as such sale of goods, wares, merchandise, edibles or beverages, or exhibits thereof, shall be continuously held in the City of Miami, Florida, but, in no event, shall it continue for a longer period than September 30th following the date of issuance. Such license permit shall be prominently

displayed in a conspicuous place, on the premises where such sale or exhibit is being conducted, and shall remain so displayed so long as any goods, wares, merchandise, edibles or beverages are being sold or exhibited."

Section 9 provides as follows:

"The provisions of this ordinance shall not apply to or govern any person who has been a resident and has lived in Dade County continuously for the twelve months immediately prior to the filing of application for license under the terms of this ordinance."

We have quoted the parts of the ordinance as herein set forth because the provisions quoted show clearly that the ordinance is arbitrary, unreasonable and discriminatory. It is clearly apparent that the ultimate purpose which was sought to be accomplished by this ordinance was not that of raising public revenue; nor was it to regulate the business of transient merchants by the exercise of the police power for the public benefit. But it appears to have been the purpose to discriminate between the established merchants and new merchants coming into the territory and to discriminate between non-residents and residents of the municipality. The ordinance only applies to lawful businesses; to that class of businesses in which every citizen has the right to engage by complying with reasonable laws having like application to all persons like situated. The purpose of the ordinance appears to be to protect the home merchants against that competition, although honest and fair, which could prosper only because of the influx of population during certain seasons of the year.

The ordinance by legislative fiat declares that the phrase "itinerant retail or wholesale merchant" shall include all persons who have operated or may operate any seasonal, temporary or transient business for a period of less than

one full calendar year in the City of Miami, Florida. In other words, one who in 1934 operated a transient or seasonal business in the City of Miami is precluded from entering into the permanent mercantile business in Miami on October 1, 1935, without complying with the terms of the ordinance, however *bona fide* his purpose and intention may be to continue all times thereafter in business in that municipality.

The ordinance also declares one to be an itinerant retail or wholesale merchant if he has "not heretofore engaged in any business or profession in the City of Miami for a period of less than one full calendar year immediately preceding application for license by selling or serving goods, edibles, wares, beverages, merchandise or any other commodity or service thereto appertaining, and who for the purpose of carrying on business or any part of service thereto appertaining, occupies, leases, hires or makes use of real estate, buildings, etc." Under these provisions of the ordinance one who has operated a seasonal, temporary or transient business in the City for a period of less than one full calendar year is declared to be a retail or wholesale merchant, while one who has not engaged in any business or profession in the City of Miami for less than one full calendar year immediately preceding the application for license is also an itinerant retail or wholesale merchant.

Section 2 of the Act makes it unlawful for any Itinerant Vendor or Itinerant Merchant as defined in Section 1, to exhibit, offer for sale, or sell goods, wares or merchandise in the City without first obtaining a license as provided for in the Act.

Paragraph (f) of Section 2 of the Act requires the Itinerant Vendor or Itinerant Merchant before he can receive a license to execute a bond in the sum of One Thousand

($1,000) Dollars to be signed by a surety company or corporation authorized to do business in the State of Florida, conditioned that the principal and surety shall pay all personal property taxes that shall be assessed against the itinerant vendor or itinerant merchant, as well as all taxes assessed against his stock of merchandise or other personal property used by him in his business during the year immediately following the date of the issuance of the license to him and also that the itinerant merchant make and file on or before the 10th of each month a sworn monthly return for the period of six months to the Director of Finance, showing the value of his goods, wares or merchandise. It is true that in lieu of the bond the merchant is allowed to deposit $25.00 for each $1,000 or fraction thereof of the value of the stock and fixtures to guarantee the payment of all personal property tax that shall be assessed against the merchant or against his stock and equipment.

Section 3 of the Act vests the power in the Director of Finance of the City of Miami to make investigation and determine the moral character of the applicant and his business integrity and the nature and character of the business sought to be carried on and transacted and to issue a permit, if in the judgment of said Director of Finance he finds the applicant worthy of transacting business in the City of Miami and the business be a legal one and not prohibited or restricted by other ordinances of the City of Miami. The ordinance fixes no standard of fitness or moral character, but leaves these important factors to be determined by its Director of Finance.

Section 9 of the ordinance, it will be observed, provides that none of the terms of it shall apply to or govern any person who has been a resident and has lived in Dade County

continuously for twelve months immediately prior to the filing of application for license.

There is nothing in the Act to indicate that it would have been adopted without the provisions of Section 9. There can certainly be no good reason for a classification as the basis either of a police ordinance or a revenue Act when such classification depends entirely upon whether or not the person classified has resided in one county or another during the 12 months next preceding his license to engage in business. Under this ordinance a resident of Broward County entering the City of Miami to engage in the mercantile business must submit himself to all the discriminatory provisions of ordinance No. 1200, while anyone who has resided in Dade County for a period of 12 months, be his character or reputation what it may, may enter the City of Miami and engage in any sort of lawful mercantile business and remain immune to all the provisions of ordinance No. 1200.

Ordinances carrying such discriminatory provisions as are found in this one must be held invalid as being contrary to Section 1 of the Declaration of Rights of the State of Florida and the Fourteenth Amendment to the Constitution of the United States. See State v. Osborne, 171 Iowa 678, 154 N. W. 295; *Ex Partee* Wacholder, 36 Pac., 2nd Ed., 705. Analogous cases are S. A. L. Ry. Co. v. Simon, 56 Fla. 545, 47 Sou. 1001; Harper v. Galloway, Sheriff, 58 Fla. 255, 51 Sou. 226.

In the case of Gould v. Atlanta, 55 Ga. 678, it was said:

"But the ordinance is singularly at variance with the grant of power contained in the charter. The power is, to tax itinerant traders generally. The ordinance is no attempt to exercise the power upon residents of the city, but upon non-residents only. Again, even non-residents are not taxed if they come in wagons. This is a discrimination founded on

vehicles, or modes of conveyance. If T. Gould & Company had transported their merchandise in wagons and not in railroad cars, they would have been clear of this ordinance, but having come by railroad they are within its jaws. This discrimination alone would perhaps be sufficient to render the ordinance invalid. Its chief defect, however, considered with reference to the grant of power on which it rests, is that it spends its whole force on non-residents and spares residents entirely. Suppose a citizen peddles his wares through the city, is he not an itinerant trader? And, if so, where is the authority in the charter for an ordinance taxing itinerant traders that leaves him untaxed as such? When power is given to municipal corporations to impose the taxes, whatever else the grant may mean, it certainly means that the citizens are to be taxed. That is the plainest and most obvious construction in all cases. Other persons may be included, but citizens must be, unless expressly excepted. It is for them, and them chiefly, that local legislation is to act. Until there is an ordinance that binds the citizen, there can be none (other than a mere police regulation) that binds the stranger. When the stranger comes into the city he may be watched, but he cannot be taxed if citizens of his class are not taxed, unless there is some special grant of authority enabling the municipality to tax him as a non-resident."

There is nothing in the opinion and judgment in the case of Greenleaf & Crosby Co., etc., v. Coleman, 117 Fla. 723, 158 Sou. 421, in conflict with the holding in this case. There we held that there was no invalidating discrimination.

Since our conclusion is that the ordinance is invalid because its terms discriminate between residents and non-residents and ALSO BECAUSE BY THE TERMS OF THE ACT an unwarranted discrimination is created between those persons, firms or corporations which may have in the past conducted

temporary or seasonal mercantile businesses in the City of Miami and those who have not done so, and because the ordinance by its terms attempts to place arbitrary and unreasonable burdens on persons engaged in a lawful business in a lawful manner which it does not place on other persons engaged in like businesses conducted in the same community and in the same manner, it is unnecessary for us to discuss other questions presented as to the validity of the ordinance.

It appears that the learned Circuit Judge was without error in holding the ordinance invalid and the judgment should be affirmed.

It is so ordered.

Affirmed.

ELLIS, P. J., and TERRELL, J., concur.

WHITFIELD, C. J., and BROWN and DAVIS, J. J., concur in the opinion and judgment.