Nov. Term,
1859.

THE INDIAN-
APOLIS, &c.,
RAILRO'D CO.
v.
WRIGHT.

---

THE INDIANAPOLIS AND CINCINNATI RAILROAD COMPANY *v.*
WRIGHT.

Suit against a railroad company to recover for cattle killed by their engines. The right to recover was rested on the following facts: Near where the stock was killed, was a small brook, over which the company had built a culvert. Below the culvert the plaintiff had a pasture in which he kept his cattle. Across the brook, below the culvert, he had made a fence of long poles. A flood came and floated driftwood through the culvert, against the fence. To prevent the accumulation of drift above the culvert in such quantities as to endanger its safety, the company aided in its passage. At sunset, the plaintiff knew the exposed situation of his fence, but would not remove his cattle. At night, the fence being borne away, the cattle passed upon the road and were killed. *Held,* that the plaintiff could not recover.

APPEAL from the *Shelby* Court of Common Pleas.

PERKINS, J.—Suit commenced in the Court of Common Pleas, by *Wright*, against the *Indianapolis and Cincinnati Railroad Company,* to recover for stock killed by the engines of the company.

Judgment below for the plaintiff.

No attempt was made to prove that the stock was killed through any negligence on the part of the company in running the engines; but the right to recover is rested on the following facts:

Near the point where the stock, consisting of seven head of cattle, was killed, was a small creek. Over this creek the railroad had built a culvert. Down the creek from this

Nov. Term,
1859.

THE INDIAN-
APOLIS, &c.,
RAILRO'D CO.
v.
WRIGHT.

culvert, the plaintiff, *Wright*, owned the pasture field in which he kept the seven head of cattle; and across the creek, below the railroad culvert, was a fence made of long poles. There came a freshet, and it washed down drift wood, which, passing through the culvert, floated against the poles stretched across the creek. To prevent this drift accumulating on the upper side of the culvert in such quantities as to endanger its safety, the railroad company aided the drift in its passage through the culvert. The drift floating against the poles, both were borne away by the torrent of water, and thus a gap left, on the subsidence of the water, through which the cattle passed, in the evening, onto the railroad track, and were, directly after, killed by a passing train. *Wright* knew, at sundown of that day, the exposed situation of the poles across the creek, and had another unexposed pasture into which he might have removed his cattle, but would not do it.

The facts in this case lay no foundation for liability on the part of the railroad company. The water of the creek flowed in its natural current. The freshet was the act of GOD, and the drift, its natural consequence. The railroad company did not divert the drift from its natural course, but so guided it in it, as to prevent injury to their own, without increasing the danger to the property of others. If the poles could not resist the natural flowage of the drift, they would hardly have withstood the accumulated drift and culvert which would have finally been swept against them, if the drift had not been passed off by itself.

*Per Curiam.*— The judgment is reversed with costs. Cause remanded, &c.

*J. S. Scobey*, for the appellants (1).

*D. M'Donald* and *A. G. Porter*, for the appellee.

(1) Mr. *Scobey* cited 3 Blacks. Comm. 209, 211; *Wells* v. *Howell*, 19 Johns. 385; *The Lafayette, &c., Railroad Co.* v. *Shriner*, 6 Ind. R. 141; *Williams* v. *The New Albany, &c., Railroad Co.*, 5 *id.* 111; *Crookshank* v. *Kellogg*, 8 Blackf. 256; *Porter* v. *Allen*, 8 Ind. R. 1; 2 Pars. on Cont. 454; 2 Greenl. Ev., § 256; Sedgw. on Dam. 66 to 71; 17 Pick. 284 to 288, 453; 7 Hill. 61; 2 Seld. 85; 2 Met. 615; 7 Cush. 522; 5 Denio, 306; 8 Grat. 16; 14 Barb. 232; 20 Eng. Law and Eq. 410; 18 *id.* 557; 4 Blackf. 348; 2 Ind. R. 597; 3 *id.* 271.