### GAS CONSUMERS MAY ENFORCE SUPPLY.

Superior Court of Cincinnati.

## STATE OF OHIO, EX REL AUGUST LEINEWEBER, v. THE UNION GAS & ELECTRIC COMPANY.

Decided, March 11, 1913.

*Mandamus—Lies Upon Petition of Consumer to Compel Gas Company to Furnish a Supply—Company Required, Under the Cincinnati Ordinance, to Install Meters Free of Cost—Sections 1571 and 12283.*

1. The Superior Court of Cincinnati has jurisdiction to issue writs of mandamus.
2. A citizen and resident of a city may have a writ of mandamus issued, upon his own relation, to a public service corporation commanding it to furnish him gas in accordance with the terms and conditions of a city ordinance, when such corporation has accepted the benefits of such ordinance, and is bound by its provisions to furnish gas to the citizens and residents of such city.

*Alfred Bettman,* City Solicitor, for relator.
*Miller Outcalt,* contra.

PUGH, J.

Opinion of the court on the demurrer to the petition.

On February 1st, 1913, the relator, August Leineweber, filed his petition in this court wherein he states:

"That he is a resident and citizen of the city of Cincinnati, residing at No. 2111 Winchell avenue in said city, and is a consumer or desires to become a consumer of the gas product of the defendant company at that place; that the defendant, the Union Gas & Electric Company, is a public utility corporation organized under the laws of Ohio and engaged in the business, as public utility company, of supplying gas for light, heat and power purposes to public and private consumers within the city of Cincinnati; that on the 26th day of December, 1905, the city council of the city of Cincinnati passed ordinance No. 1222 to authorize the Cincinnati Gas & Electric Company to supply natural gas for the purpose of heat, light and power and all other necessary uses by both public and private consumers,

which ordinance, amongst other things, provided that the company shall at its own cost and expense supply, place and maintain all gas meters; that said ordinance was accepted by the Cincinnati Gas & Electric Company shortly after its passage; that in the early part of 1906 the said the Cincinnati Gas & Electric Company leased its plant, business and franchise to the defendant, and the defendant assumed all the obligations of said the Cincinnati Gas & Electric Company under said ordinance; that on the 27th day of January, 1913, the relator desired to have gas supplied to him at the above described residence for lighting and heating purposes of said residence, and that all connections with the plant of the defendant company are installed and all that is necessary to be done is the turning the gas of the defendant company on in said premises; that, however, the defendant company refuses to give a supply of gas to said relator until and unless the relator pays one ($1) dollar for the supplying and installation of a gas meter in said premises for the measuring of the supply; that the refusal of defendant to supply is based solely and exclusively on the refusal of the relator to pay said one ($1) dollar for supplying and installation of such meter.

"Wherefore, the relator prays that a writ of mandamus issue commanding the said the Union Gas & Electric Company to supply natural gas to the relator at No. 2111 Winchell avenue for lighting and heating without compelling or requiring the relator to pay one ($1) dollar or any other sum for the supplying and installation of a gas meter on said premises, and that said defendant be commanded to supply and install such meter at its own expense."

Upon this petition an alternative writ of mandamus was issued, on the same day, by Judge Oppenheimer of this court and the case now comes up on the demurrer of the defendant to the plaintiff's petition.

The demurrer is based upon two grounds, *first*, that the court has not jurisdiction of the person of the defendant, nor of the subject of the action; and, *second*, that the petition does not state facts which show a cause of action.

1. The alternative writ has been issued and was served upon the defendant, through one of its officers, on February 7th, 1913.

The defendant is an Ohio corporation. On February 10th, 1913, the defendant filed its motion to dismiss this action, which

was argued and submitted and, later, overruled.   On March 4th, the defendant filed the demurrer to the petition, which is now being considered.   Under these circumstances, the court certainly has as full and complete jurisdiction of the person of the defendant as it is possible, in law and fact, to have of the person of any corporation.

The objection that the court has no jurisdiction of the subject of the action is more serious.   There is no reported case in which the Superior Court of Cincinnati has issued a writ of mandamus, or refused to issue it.

The jurisdiction of this court is defined by General Code, Section 1571, which provides that:

"When the issue or matter in dispute exceeds the exclusive jurisdiction of justices of the peace, the superior court shall have jurisdiction to hear, try and determine, according to law, the following actions."

Then follow  ten subsections specifying the actions in question.

. Subsection 4 of General Code, Section 1571, in so far as it concerns this case, is as follows:

"Actions brought against a corporation, created by the laws of this state, which is situated in the city of Cincinnati, or has its principal office or place of business therein."

The petition alleges that the defendant is a corporation "organized under the laws of Ohio," and this is equivalent to a statement that it was "created by the laws of this state," and, on demurrer, this allegation must be accepted as true.   The petition, however, does not allege that the defendant corporation "is situated in the city of Cincinnati, or has its principal office or place of business therein."   As counsel, in argument, dealt with the case on the assumption that the petition was complete in this respect, and the facts as to defendant's situation and the location of its principal office and place of business in the city of Cincinnati are so well known and admitted, the relator will be permitted to amend and, for the purposes of this opinion, the amendment will be considered as already made.

It is contended, however, that, *first,* the jurisdiction of the superior court is limited, in terms to "actions," *i. e., civil actions,* and this may readily be conceded; and, *second,* that a proceeding in mandamus is not a *civil action* in Ohio, and this can not be conceded at all.

In this state, the writ of mandamus must be applied for by petition, verified by affidavit (General Code, Section 12286), to which "the defendant may answer as in a civil action, or, if the writ be allowed by a single judge, he may demur" (General Code, Section 12292), and "the plaintiff may demur to the answer, or reply to new matter therein, and the defendant may demur to the reply as in a civil action" (General Code, Section 12293). Furthermore, General Code, Section 12295, provides that "the pleadings shall have the same effect, must be construed, may be amended, and issues of fact made by them must be tried, and further proceedings thereon had, in the same manner as in civil actions."

The absolute or peremptory writ of mandamus issued upon trial and determination of the issues is akin to a decree for specific performance of a contract or a mandatory injunction although based upon different grounds. While mandamus is still called a prerogative writ, it had been materially changed by statute since it was first so styled, and, after all, calls for no more extraordinary exercise of power, in many cases, than the issuance of a mandatory injunction or a decree for specific performance.

To quote the language of Judge Bradbury, in commenting on the above provisions of law, in the case of *State, ex rel,* v. *Crites, Auditor,* 48 Ohio St., 143, at page 175, "In view of these express provisions of the statute, it is difficult to see wherein a proceeding in mandamus differs in any material respect from a civil action, or even in any respect, except in name."

The decision in the later case of *State, ex rel,* v. *Philbrick,* 69 Ohio St., 283, in the opinion of this court, is conclusive on the point. The question before the Supreme Court, in that case, was whether the determination of the lower court, in a proceeding in mandamus was appealable. At that time, the matter of appeals was governed by Revised Statutes, Section 5226, and

this section, unchanged, is. Section 12224 of the General Code. The language of this statute limits appeals to *civil actions*, and the court expressly so stated (page 284), and held that a judgment in a proceeding in mandamus was appealable, citing *Dutten* v. *The Village of Hanover*, 42 Ohio St., 215, wherein the same question was decided in the same way.

If a proceeding in mandamus is a civil action within the meaning of that term as it appears in the statute authorizing appeals, there is no reason to doubt that it is likewise a civil action within the meaning of that term when employed in a statute defining the jurisdiction of the Superior Court of Cincinnati.

2. As a second ground of demurrer, it is argued that the relation between the plaintiff and the defendant is *contractual*, and that relations merely contractual can not be enforced by mandamus. Mandamus, in this state, is defined by statute, General Code, Section 12283, thus:

"Mandamus is a writ issued, in the name of the state, to an inferior tribunal, a corporation, board, or person, commanding the performance of an act which the law specially enjoins as a duty resulting from an office, trust or station."

It may be conceded at once that a duty which rests solely upon the legal obligation to carry out a contract, is not a proper matter for enforcement by a writ of mandamus (*Mt. Vernon* v. *State*, 71 Ohio St., 428, 453; *State, ex rel,* v. *Railway Co.*, 15 Ohio C. C., 200; *Freon* v. *Carriage Co.*, 42 Ohio St., 30, 40). To repeat the statutory language it must- be "an act which the law specially enjoins as a duty resulting from an office, trust or station." It does not follow, however, that such a duty can not arise from a contract, or that it will be any the less such a duty because it is also a contractual obligation.

It appears from the petition in this case that the Cincinnati Gas & Electric Company, a public utility corporation engaged in the business of supplying natural gas to consumers, contracted with the city of Cincinnati to furnish natural gas to the citizens and, *inter alia*, "at its own cost and expense supply, place and maintain gas meters." This contract is, in form, an

ordinance of said city, passed December 26th, 1905, and shortly afterward, in 1906, was accepted by the Cincinnati Gas & Electric Company. Later, as the petition shows, the last named company leased its entire plant, business and franchise to the present defendant, the Union Gas & Electric Company, which took over all the benefits and assumed all the obligations of the ordinance in question.

General Code, Section 3982 (formerly Revised Statutes, Section 2478), relating to natural or artificial gas companies, provides, *inter alia*:

"The council may regulate and fix the price which such companies shall charge for the rent of their meters, and such ordinance may provide that such price shall include the use of meters to be furnished by such companies, and in such case meters shall be furnished and kept in repair by such companies and no separate charge shall be made, either directly or indirectly, for the use or repair of them."

It is claimed that this statute enjoins upon the defendant the duty of installing a gas meter on the premises occupied by the plaintiff, without any charge therefor. It will be observed, however, that the language quoted relates to the price to be charged for gas furnished and to the price to be paid as *rent* for the *use* of gas meters, and does not touch the point here under consideration, which is the matter of charge, not for the gas, or for the meter, or for rent of the same, but for installing or putting in place the meter itself.

It remains then to inquire whether, in the absence of any express statutory provision, there is a duty enjoined on the defendant, outside of and beyond its mere contractual obligation, under the ordinance of December 26th, 1905, to furnish natural gas to the citizens and residents of Cincinnati, including, of course, the relator.

It is not denied that, under the terms of the ordinance, the defendant is bound to furnish gas without any charge for installing a meter, and, it is obvious that, if it can impose this charge on the relator, it can burden him, or any other citizen and resident, with any charges it sees fit to make, whether authorized by the ordinance or not.

The defendant is a public utility corporation, engaged in furnishing natural gas to the general public of the city of Cincinnati under ordinance of December 26th, 1905. Obviously, its obligation to ·carry out the agreements and stipulations of such ordinance is contractual, but it is something more.

The defendant has put itself forward as willing to perform certain public services for the citizens of Cincinnati, and its offer has been accepted. In consideration of this, it has been vested, both by law and ordinance, with certain special privileges and franchises which could not otherwise have been given. it, or be enjoyed by it in any other character than that of a public utility company. These special privileges and franchises did not and could not come to it through any mere contract. They could not be bestowed upon a private individual or a private company. The obligation to render these services is no mere contractual obligation, it is a public duty. In this view, a public utility corporation, in its dealings with the community does not carry out its contracts, it performs its duties. A public service company is a public servant. Its duties, though originating in a contract, are enjoined on it by law, and they result from its trust and station as a public utility company. The fulfillment of such duties is not decreed by a court of equity at the termination of a law suit, but is directly commanded by the law itself.

Professor Wyman of Harvard, in his book on Public Service Corporations, speaking of these duties, says:

Section 330. ''From the very beginning of our law, as has been seen, it has been recognized that some kinds of business were of special importance to the public, and that all persons engaged in such business owed the public peculiar duties. No one could be compelled to enter upon the employment; but if he chose to do so, he thereby undertook the performance of the public duties connected with it.  *  *  *  The duty placed upon every one exercising a public calling is primarily a duty to serve every man who is a member of his public.''

Section 331. ''It is somewhat difficult to place this exceptional duty in our legal system. It is like the contractual obligation in that it is an affirmative duty to act for a certain person; but it is different in that it does not depend upon assent of the party charged. It is like the obligation in tort in that it

is imposed by law; but it is not imposed upon anyone against his will as is the obligation in tort. In one sense the obligation to serve the public is voluntarily assumed; and therein the public duty to act differs from the typical duty not to commit a tort, which each person without his ever being consulted owes to all the world. And yet once this obligation is established by his undertaking, his duty extends to all within the profession, however unwilling he may be in a particular case to render service. Public duty is in this sense imposed by law upon those who put themselves into public service; and therein very plainly the situation differs from the typical contractual duty which one owes only in particular cases to the person with whom he has voluntarily negotiated a previous agreement.''

Now it is this duty which it is sought to enforce in this case by writ of mandamus. It is a duty, in the language of the General Code, Section 12283, above quoted, ''which the law specially enjoins as a duty resulting from * * * trust or station.''

It has frequently been enforced by courts in the same manner as here attempted; sometimes because it was a duty specially enjoined by statute; sometimes on the broad ground that the duty was inherent in the nature of the business carried on.

In *State, ex rel,* v. *Telephone Co.,* 36 Ohio St., 296, 309, the duty was imposed on the defendant, by statute, to receive and forward telegraphic dispatches, and this duty was enforced by mandamus on the relation of two corporations which desired to avail themselves of this right.

The case of *Snell* v. *E. L. H. & Power Co.,* 196 Ill., 626, is much like the one under consideration. The defendant, a public service company, supplying electric light to the public, refused to serve the plaintiff unless he first paid the cost of a transformer. There was no statute requiring the defendant to furnish the transformer, nor was it under any contractual obligation so to do, but it was essential to the use of the light and it did appear that the company furnished transformers to other consumers free of charge. The court held that the company could not properly require the consumer to pay for the transformer and that it would be compelled, by mandamus, to supply electric light without any such charge.

In the following cases it will be found that, in some instances the duty was imposed by express statute and in others was held to arise from the defendants' character as public service corporations. In every case, mandamus was held to be the proper method of enforcing the right of the individual consumer or customer. *People, ex rel,* v. *Manhattan Gas Light Co.,* 45 Barb. (N. Y.), 136; *Johnson* v. *Gas & Water Co.,* 65 N. J. Eq., 129; *Richman* v. *Consolidated Gas Co.,* 100 N. Y. Supp., 81; *State, ex rel,* v. *Consumers' Gas Tr. Co.,* 157 Ind., 345, 351; *State, ex rel,* v. *Gas Light Co.,* 108 La., 67; *American Waterworks Company* v. *State,* 46 Neb., 194; *State, ex rel,* v. *Telephone Co.,* 17 Neb., 126; *State, ex rel,* v. *Telephone Co.,* 93 Mo. App., 349; *State, ex rel,* v. *Sedalia Gas Co.,* 34 Mo. App., 501; *State, ex rel,* v. *City Water Co.,* 18 Mont., 199; *Asher* v. *Water Co.,* 66 Kan., 496, 499; *Canal Co.* v. *Shuman,* 91 Ga., 400; *Hangen* v. *Albina L. & W. Co.,* 21 Oregon, 411; *Mackin* v. *Portland Gas Co.,* 38 Oregon, 120; *State, ex rel,* v. *Street Ry. Co.,* 19 Wash., 518; *Fellows* v. *Los Angeles,* 151 Cal., 52; *State, ex rel,* v. *Telephone Co.,* 61 S. Car., 83.

The cases of *State, ex rel,* v. *Turnpike Co.,* 16 Ohio St., 308, and *Gas Light Co.* v. *Zanesville,* 27 Ohio St., 35, which are apparently in conflict with the doctrine of law just stated, will be considered presently.

3. General Code, Section 12287, provides:

"The writ must not be issued in a case where there is a plain and adequate remedy in the ordinary course of the law. It may issue on the information of the party beneficially interested."

If the defendant violated or refused to carry out the provisions of the ordinance of December 26th, 1905, in some particular that affected the other party to the contract, the city of Cincinnati, the city solicitor might enforce its performance under authority of General Code, Section 4311, and, if he refused so to do, it might be enforced by an individual tax-payer under General Code, Section 4314. The authority of the city solicitor, and, in case of his refusal, of the tax-payer, however, under these sections is limited to cases wherein the rights of the munic-

ipality, as distinguished from those of an individual citizen or number of citizens, is involved. They furnish no relief to an individual toward whom a public service company refused to perform its duty. *Knorr* v. *Miller,* 5 Ohio C. C., 609, 614; *Hensley* v. *Hamilton,* 3 Ohio C. C., 201, 207; *Peppard* v. *Cincinnati,* 6 Ohio N. P., 57, 59; *Fergus* v. *Columbus,* 6 Ohio N. P., 82; *State, ex rel,* v. *Roebuck,* 2 Ohio N.P.(N.S.), 688.

Neither has the relator in this case any legal cause of action against the defendant for refusal to furnish him gas. A contract between a city and a public service company can not be sued upon by an individual citizen, though in fact it was entered into for the benefit of all citizens, including the one who sues. While it is a contract between two parties for the benefit of others, there being no legal obligation on the part of the city to furnish gas to the citizens, there exists no such privity between the latter and the contracting company as will support an action on such contract. *Blunk* v. *The Dennison Water Supply Co.,* 71 Ohio St., 250. And, though there are decisions to the contrary, the weight of authority supports this view. *Fitch* v. *Water Co.,* 13 Ind., 214; *Nichol* v. *Water Co.,* 53 W. Va., 348; *Wainwright* v. *Water Co.,* 78 Hun., 146; *Britton* v. *Waterworks Co.,* 81 Wis., 48; *House* v. *Waterworks Co.,* 88 Texas, 233; *Ferris* v. *Water Co.,* 16 Nev., 44; *Fowler* v. *Water Works Co.,* 83 Ga., 219; *Metz* v. *Waterworks & E. L. Co.,* 202 Mo., 234; *Wilkinson* v. *L. H. & Water Co.,* 78 Miss., 389; *Hone* v. *Water Co.,* 104 Me., 217; *Davis* v. *Water Works Co.,* 54 Iowa, 59; *Mett* v. *Water & Mfg. Co.,* 48 Kan., 12; *Beck* v. *Water Co.,* 11 Atl. Rep., 300 (Pa.).

Coming now to the consideration of the Ohio cases above referred to as in apparent discord with what has been said herein, it will be seen that the first, *State, ex rel,* v. *Turnpike Co.,* 16 Ohio St., 308, was an action by the board of county commissioners of Ross county against the turnpike company, wherein the former attempted, by mandamus, to compel the latter to repair a bridge, part of the turnpike, which it was bound to do under its contract. The court held that the obligation to repair was merely contractual and could be enforced by a decree of a court of equity. Hence, a writ of mandamus could not issue.

The court also held that, if it were a proper case for mandamus, the relators had not such a beneficial interest as entitled them to prosecute a writ of mandamus, and then weakens the effect of its holding on the first point by adding (pages 319, 320), "whether the corporate duty here sought to be enforced is a trust, within the meaning of the statute, which, with proper parties, can be enforced by mandamus, is a question which remains undetermined in this state by any reported case, and as the view which we take of another question hereafter to be named renders it unnecessary for us now to pass upon it, we leave it where we find it."

The second case above referred to, is that of *Gaslight Co.* v. *Zanesville,* 47 Ohio St., 35. This was an action for a mandatory injunction brought on behalf of the city of Zanesville, by the city solicitor, to compel the defendant to furnish gas to the city. Though in form an action for a mandatory injunction, it was in effect, an action for specific performance of a contract. The rights involved were those of the city itself, not of any individual consumer or consumers. The action was instituted under the provisions of Revised Statutes, Section 1777, which is now General Code, Section 4311, which are as follows:

"When an obligation or contract made on behalf of the corporation granting a right or easement, or creating a public duty, is being evaded or violated, the solicitor shall likewise apply for the forfeiture or specific performance thereof as the nature of the case requires."

This section, as seen, expressly authorizes the solicitor to bring an action for the specific performance of the *public duty* to furnish gas to the city. No writ of mandamus would lie in such case, as the right to apply for it is limited in the next section, General Code, Section 4313, thus:

"In case an *officer* or *board* fails to perform any duty expressly enjoined by law or ordinance, the solicitor shall apply to a court of competent jurisdiction for a writ of mandamus to compel the performance of such duty."

The action we are considering was therefore properly brought and expressly authorized by the words of the statute, and the court so held. But it went further and stated in the opinion

(page 50), that the obligation of the gas company was one merely contractual and therefore not a proper subject of mandamus even in the absence of statute, citing the case above noticed, *State, ex rel,* v. *Turnpike Co.,* 16 Ohio St., 308.   It was not necessary to the decision of the case to make this further declaration of law, and it is therefore only a *dictum.*   This view is strengthened by observing that no such statement of law is contained in the syllabus of the case, which, under Ohio practice, contains the real decision.

Further, it seems to the court, that all doubt upon the subject should be dissipated upon careful consideration of the significance and effect of a later Ohio case, *Blunk* v. *Dennison Water Supply Co.,* 71 Ohio St., 250, above referred to.

In this last named case, a water company, a public service corporation, was under contract with the village of Uhrichsville to supply the village and its inhabitants with water suitable for domestic and manufacturing purposes and sufficient to afford protection from fire.   The plaintiff's house was burned and he sued the water company for damages for failing to supply water sufficient for fire protection as stipulated.   But one point was decided, namely, that, in such a contract there is no privity between an individual consumer of water, an inhabitant of the village, and the company, and therefore the former could not maintain an action at law upon it for damages.   The only privity of contract in such case is between the immediate parties thereto, the village and the water company.   The cases cited above in this opinion from other states fully sustain this decision, and see also, *1 Wyman on Public Service Corporations,* Section 350.

It needs no citation of authority to establish the doctrine that a contract which, for want of privity between the parties to the suit, will not sustain an action at law for damages, will not authorize a court of equity to decree a specific performance or issue a mandatory injunction.

It follows from the above that, if the relator in this action, can not have his clear, undeniable, undisputed right enforced by means of a writ of mandamus, he can not have it at all.   This court is not prepared to say to him that it admits his right but

can do nothing for him, nor is it willing to keep him out of his right any longer than the interests of justice require.

For the reasons abve stated, the relator will be allowed to amend his petition, as above indicated, and, when this is done, a peremptory writ of mandamus will be issued. This is authorized by General Code, Section 12288, "When the right to require the performance of the act is clear and it is apparent that no valid excuse can be given for not doing it, the court, in the first instance, may allow a peremptory mandamus." The right of the relator is clear in the case under consideration and there can be no valid excuse on the defendant's part, for not furnishing him gas under the terms of the ordinance.