COMMONWEALTH *vs.* JAMES E. WORTH.

Nantucket. October 23, 1939. — November 27, 1939.

Present: FIELD, C.J., LUMMUS, QUA, & COX, JJ.

*Deer.*

A defendant had "in possession" in violation of G. L. (Ter. Ed.) c. 131, § 108, the carcass of a deer which, during the closed season, he carried away and kept until the next day after the deer had been killed by running into an automobile operated by him on a public highway.

COMPLAINT, received and sworn to in the District Court of Nantucket on January 16, 1939.

On appeal to the Superior Court, the complaint was tried before *Baker*, J. There was a verdict of guilty. The defendant alleged exceptions.

*G. M. Poland*, for the defendant.

*F. E. Smith*, Assistant District Attorney, for the Commonwealth.

Cox, J. The defendant was found guilty by a jury and sentenced on a complaint charging that he "did have in

his possession the carcass of a deer in Nantucket on January 11, 1939, in violation of G. L. (Ter. Ed.) c. 131, § 108." The bill of exceptions states that there was evidence tending to show that, on that date, the defendant was operating a motor vehicle on an unlighted highway, in Nantucket, at night, and that a deer collided with his vehicle and was killed upon the highway; that the defendant took the deer to his garage; that he did not notify the local game warden except that, on January 12, 1939, upon being questioned by the warden, he stated the facts to be substantially as above described. The warden took the carcass. The defendant seasonably requested the trial judge to give certain rulings, hereinafter referred to, and excepted to his refusal to do so. The judge instructed the jury, in substance, that it was immaterial how the deer was killed, and the defendant excepted to this instruction. The real question to be determined is whether the mere possession of the carcass in the circumstances amounted to an offence under the statute.

"In this Commonwealth the title to wild animals and game is in the Commonwealth in trust for the public, to be devoted to the common welfare. The Legislature has made provision for the hunting of deer during a restricted period by those duly licensed. G. L. c. 131, §§ 3, 62, 63. [See now G. L. (Ter. Ed.) c. 131, §§ 5, 108, 109, as amended by St. 1937, c. 89, § 1.] These regulations are valid. The right to hunt deer exists and can be exercised only in accordance therewith. *Commonwealth v. Hilton,* 174 Mass. 29, 31. *Geer v. Connecticut,* 161 U. S. 519." *Dapson v. Daly,* 257 Mass. 195, 196, 197. It follows that wild animals, except in so far as the Legislature may determine, are not the subject of private ownership. Regulations by way of permission of the right to hunt or take game, and restrictions as to the possession or disposal of game after it has been reduced to possession deprive no person of his property, because one who takes or kills game had no previous right of property in it. *Geer v. Connecticut,* 161 U. S. 519, 533. "When it is said by writers on the Common Law of *England* that there is a qualified or special right of property in game, that is in

animals *ferae naturae* which are fit for the food of man, whilst they continue in their wild state, I apprehend that the word 'property' can mean no more than the exclusive right to catch, kill and appropriate such animals which is sometimes called by the law a reduction of them into possession. . . . If property in game be made absolute by reduction into possession, such reduction must not be a wrongful act . . . ." Lord Chancellor Westbury in *Blades* v. *Higgs*, 11 H. L. Cas. 621, 631, 632. See *Payne* v. *Sheets*, 75 Vt. 335; *State* v. *Niles*, 78 Vt. 266.

G. L. (Ter. Ed.) c. 131, § 108, provides that "Whoever, except as provided in this chapter, hunts or has in possession the carcass of a deer shall be punished by a fine of one hundred dollars; provided, that any person may, on land owned or occupied by him, or, with the consent of the owner, upon land adjacent thereto, hunt any deer which he has reasonable cause to believe has damaged or is about to damage crops, fruit or ornamental trees, except grass growing on uncultivated land; and he may authorize any member of his family, or any person employed by him so to hunt a deer under the circumstances above specified. In the event of the wounding or killing of a deer as aforesaid, the person by whom or under whose direction the deer was wounded or killed shall, within twenty-four hours thereafter, send to the director [of the division of fisheries and game] a written report, signed by him, of the facts relative to the said wounding or killing, including the time and place thereof, and the kind of tree or crop injured or destroyed, or about to be injured or destroyed by the deer." Section 109 of said chapter as amended by St. 1937, c. 89, § 1, provides: "Subject to the restrictions and provisions hereinafter contained, any person duly authorized to hunt in the commonwealth may hunt a deer, by the use of a shotgun or bow and arrow, in all counties except Dukes, between one half hour before sunrise and one half hour after sunset of each day beginning with the first Monday in December and ending with the following Saturday, and in any or all of the counties of Berkshire, Franklin, Hampden and Hampshire, if the additional hunting period hereinafter

specified is authorized in such county or counties by the
director, as evidenced by an order filed in his office and
advertised in a newspaper or newspapers published in such
county or counties not less than ten days prior to the first
Monday in December, between one half hour before sunrise
and one half hour after sunset of each day, beginning with
the second Monday in December and ending with the fol-
lowing Saturday. No person shall, except as provided in
the preceding section, kill more than one deer. No deer
shall be hunted on land posted in accordance with section
one hundred and twenty-three, or on land under control of
the metropolitan district commission, or within the bound-
aries of any public lands subject to section one hundred and
fourteen. No person shall make, set or use any trap, torch
light or jack light, salt lick or other device for the purpose
of ensnaring, enticing, taking, injuring or killing a deer. No
person shall use or carry on his person an arrow adapted for
hunting purposes unless it is plainly marked with his name
and permanent address. Whoever wounds or kills a deer
shall, within forty-eight hours thereafter, send to the direc-
tor a written report, signed by him, of the facts relative to
the wounding or killing. This section shall not authorize
the hunting of deer in any state forest reservation or any
state park or reservation under the control of the division
of parks of the department; but the hunting of deer in any
such reservation or park shall be authorized during the
whole or any part of the open season for deer provided by
this section, if and as permitted by regulations made by
the commissioner [of conservation]. Whoever violates any
provision of this section shall be punished by a fine of not
less than fifty nor more than one hundred dollars." Pro-
visions are contained in G. L. (Ter. Ed.) c. 129A, §§ 12 and
13, as inserted in the General Laws by St. 1933, c. 329, for
the issuance of warrants authorizing the search for fish,
birds, or mammals alleged to have been unlawfully taken
or possessed, and for service and seizure under the warrants.
There is a provision that fish, birds or mammals so seized
may be libelled or sold. Section 1 of said c. 129A, among
other things, provides: "In construing this chapter and

chapters one hundred and thirty and one hundred and thirty-one, the provisions thereof forbidding possession of various species of fish, birds and mammals during certain periods of the year shall not be held to prohibit a resident of the commonwealth who has legally taken, killed or come into possession of such fish, birds or mammals from having the dead bodies or carcasses thereof in possession, for his own personal use and not for sale, unless prohibited by federal legislation or regulation so to do; but the burden shall be on him to prove that such possession was lawful in its origin. Also, in construing said chapters, such provisions forbidding possession shall not be held to prohibit a person from bringing into this commonwealth, for his own personal use and not for sale, the dead bodies or carcasses of fish, birds or mammals which were lawfully taken or killed in another state, province or country, or from having such fish, birds or mammals in possession for the aforesaid purpose after the arrival thereof in this commonwealth, unless prohibited by federal legislation or regulation so to do, if before any such fish, birds or mammals are so imported they are tagged or marked in accordance with the laws of such other state, province or country and with the federal laws relative to interstate commerce, and if no more such fish, birds or mammals are imported at one time than is permitted by the laws of such other state, province or country to be exported therefrom; but the burden shall be on him to prove that such possession was lawful in its origin."

The defendant contends (1) that the possession of the carcass was lawful; (2) that the possession was not within the "prohibition" of said § 108; and (3) that the words "except as provided in this chapter" in said section are equivalent to the words "in violation of this chapter."

We think, however, that the construction contended for is not the correct one. The title or ownership of the deer being in the Commonwealth in trust for the public and no individual having any property rights to be affected, the result of the legislation is to grant to the individual upon carefully guarded conditions a privilege to hunt and possess the game. A further privilege is extended to an owner

or to one with his consent to protect certain crops and trees. It was said in *Magner* v. *People*, 97 Ill. 320, at page 333, quoted in *Geer* v. *Connecticut*, 161 U. S. 519, at pages 533 and 534: "The ownership [of game and fish] being in the people of the State — the repository of the sovereign authority — and no individual having any property rights to be affected, it necessarily results, that the legislature, as the representative of the people of the State, may withhold or grant to individuals the right to hunt and kill game, or qualify or restrict it, as, in the opinion of its members, will best subserve the public welfare. Stated in other language, to hunt and kill game, is a boon or privilege granted, either expressly or impliedly, by the sovereign authority — not a right inhering in each individual; and, consequently, nothing is taken away from the individual when he is denied the privilege, at stated seasons, of hunting and killing game. . . . But in any view, the question of individual enjoyment is one of public policy, and not of private right."

The contention of the defendant that he "struck with his automobile and killed a deer" and that this amounted to an "unintentional killing" is not borne out by the bill of exceptions, but whether the defendant killed the deer or the deer killed himself, in our opinion, is of no consequence. We think that the proper construction of the statute is that there can be no lawful possession of the carcass of a deer unless it be acquired in accordance with the provisions of the statute, that is, by hunting, killing, when doing damage, or when lawfully taken or killed without the Commonwealth, and, in all of these contingencies, subject to the provisions of the statute. This construction of the statute does not leave that part of the said § 1 of c. 129A, without opportunity of application. The open season for hunting deer is short. The Legislature has provided that the possession of the carcass of a deer killed lawfully on the last day of the open season is not unlawful on either the next day or any day thereafter. Furthermore, it has provided that the possession of the carcass of a deer killed while damaging or about to damage crops and trees is not unlawful. But the first clause of said § 108, which provides,

"Whoever, except as provided in this chapter, hunts or has in possession the carcass of a deer shall be punished . . .," is decisive of the rights of the individual, and the provisos to which reference has been made furnish the only justification for the possession of a carcass. The defendant does not come within any of these provisos and, therefore, his possession on the day in question was unlawful.

The case of *Commonwealth* v. *Hall*, 128 Mass. 410, is distinguishable. There the possession was held to be lawful. In the case of *Commonwealth* v. *Savage*, 155 Mass. 278, the defendant was convicted of having in his possession certain lobsters of less than the length permitted by the statute, which provided that "Whoever sells or offers for sale or has in his possession a lobster" of less than a certain length shall forfeit $5 for every such lobster. There was evidence that the lobsters came from the British Provinces. It was held that it was an offence under the statute to have in one's possession lobsters under a certain length without regard to the place where they were obtained. See *Commonwealth* v. *Young*, 165 Mass. 396. *Commonwealth* v. *Hodgkins*, 170 Mass. 197.

The judge was not required to give the requested rulings which have been argued, and in the circumstances there was no error in his instruction to the jury.* The third and fourth requests were immaterial and the fifth, for reasons already given, did not state the law correctly.

*Exceptions overruled.*

---

* The rulings requested were:
"3. It is not an offence to kill a deer, unintentionally, by its colliding with a motor vehicle.
"4. There is not evidence that the defendant killed a deer illegally.
"5. G. L. (Ter. Ed.) c. 131, § 108, should not be construed to impose a penalty for possession of a deer killed accidentally and without intention by an automobile."