

# OFFICE OF
# THE ATTORNEY GENERAL
## AUSTIN, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

March 22, 1948

FAGAN DICKSON
FIRST ASSISTANT

Hon. Clayton Bray
County Attorney
Sutton County
Sonora, Texas

Opinion No. V-522.

Re: The constitutionality of
Art. 923qa, Secs. 6 & 7,
V.P.C., relative to the
forfeiture of a whole-
sale fur buyer's license
upon conviction of the
offense of purchasing
pelts from an unlicensed
trapper or fur buyer.

Dear Sir:

Your request for an opinion reads, in part:

"I have received a complaint which
rather disconcerts me. The complaint is
founded under Article 923qa, 6 & 7, Penal
Code.

"The pertinent Articles require a
license, to broadly speaking, deal in furs;
and, provides for fine as well as forfeit-
ure of license to engage in such occupation
for one year from date of the conviction.

"The source of my concern is that the
forfeiture provision is applicable to a
Wholesale Fur Buyer, who, himself, had his
own license, as required by law. Unfortun-
ately, the Wholesale Fur Buyer did not as-
certain that the Retail Fur Buyer, from whom
he bought, did not have a license.

" . . .

"As I see the issue: when a person
has complied with every requirement to qual-
ify for a Wholesale Fur Buyer's license, has
paid the fee required for the license, has
had the same issued to him, and is operating
thereunder; is it in conformity with our Con-
stitution that he have his license cancelled

because of the dereliction of some other person?

"Article 923qa, 7, provides only for a reduced monetary punishment but makes cancellation of the license mandatory. Assuming that the license cancellation feature would be held to be only directory, should the duly licensed person have to subject himself to the whim and lottery of a pick-up J. P. jury?"

The pertinent parts of Art. 923qa, V. P. C., with which we are concerned, read as follows:

"Section 1. For the purpose of this Act, the following words, terms, and phrases are hereby defined:

"(a) 'Wholesale Fur Buyer'. A Wholesale Fur Buyer is any person who purchases for himself or on behalf of another person, the pelt or pelts of any of the fur-bearing animals of this State from a Retail Fur Buyer and/or from the Trapper.

"(b) 'Retail Fur Buyer'. A retail Fur Buyer is any person who purchases the pelt or pelts of any of the fur-bearing animals of this State from the Trapper only.

"(c) 'Resident Trapper; Nonresident Trapper.' A trapper is any person who takes for the purpose of barter or sale, and who sells or offers for sale, the pelt or pelts of any of the fur-bearing animals of this State, and for the purpose of this Act, trappers are hereby divided into two (2) classes, namely 'resident' and 'nonresident'. Resident trappers are those who have, for a period of twenty-four (24) months previous to their application for license, been bona fide residents of this State. All others are nonresident trappers.

"Section 2. Before any person shall operate in this State as a Wholesale Fur Buyer, Retail Fur Buyer, or Trapper, he shall be required to obtain and have in his possession a valid license entitling him to the privileges

given in this Act and to no other privileges. Such license or licenses shall be obtained from the Game, Fish and Oyster Commission, or from one of their authorized agents.

"(a) A Wholesale Fur Buyer's license may be purchased for the sum of Twenty-Five Dollars ($25) and shall entitle the holder to the privilege of purchasing the pelts of fur-bearing animals in this State from Trappers, Retail Fur Buyers, and Wholesale Fur Buyers, and the privilege of handling such pelts for shipment and sale.

"(b) A Retail Fur Buyer's license may be purchased for the sum of Five Dollars ($5) and shall entitle the holder to the privilege of purchasing the pelts of fur-bearing animals from the Trapper only and handling same for the purpose of shipment and sale.

"(c) A resident trapper's license may be purchased for the sum of One Dollar ($1), and a nonresident trapper's license may be purchased for the sum of Two Hundred Dollars ($200), and the respective licenses shall entitle the holder to sell only his own catch of the pelts of fur-bearing animals of this State, which he has lawfully taken.

"Section 4. When a person, firm, or corporation operates as a Wholesale Fur Buyer or as a Retail Fur Buyer, a license shall be required for each place of business and be publicly displayed in said place of business at all times, and all such places of business shall be subject to inspection, without warrant, by any game and fish warden at any time. If a person operates as a Wholesale Fur Buyer, Retail Fur Buyer, or as a Trapper, other than at an establishment for which a license has been issued, he shall have on his person, whenever conducting such operations, the license required of him as a Wholesale Fur Buyer, Retail Fur Buyer, or Trapper, and any vehicle which he operates shall be subject to inspection, without warrant, by any game and fish warden at all times that such vehicle is being used for the collection of the pelts of fur-bearing animals or for the purpose of transporting same.

"<u>Section 6</u>. It shall be unlawful for any Wholesale Fur Buyer or a Retail Fur Buyer to purchase the pelt of any fur-bearing animal of the State from any person unless such person holds a Trapper's license or a Wholesale Fur Buyer's License or a Retail Fur Buyer's license, and it shall be unlawful for any person to operate as a Wholesale Fur Buyer, Retail Fur Buyer, or Trapper, as defined in this Act, without first obtaining the license required for the business engaged in.

"<u>Section 7</u>. Any person violating any provision of this Act shall be deemed guilty of a misdemeanor and upon conviction shall be fined in a sum not less than Twenty-five Dollars ($25) nor more than Two Hundred Dollars ($200), <u>and any person convicted under any provision of the Act shall automatically forfeit any license which he may hold under any provision of this Act and shall not be permitted to obtain any license provided for under this Act for a period of one year from the date of his conviction</u>." (Emphasis supplied)

At the outset it must be clearly understood that all wild fur-bearing animals of this State are the property of the people of this State. Art. 923m, V.P.C.; 20 Tex. Jur. 588. There being no question in your request about this statute as applied to domesticated fur-bearing animals, no opinion is expressed thereon. See 24 Am. Jur. 391, Game and Game Laws, Section 26.

A clear-cut expression of the power of the State to regulate the taking and marketing of game animals is found in Commonwealth v. Worth, 304 Mass. 313; 23 N.E. (2d) 891, as follows:

"In this commonwealth (as it is in Texas) the title to wild animals and game is in the commonwealth in trust for the public, to be devoted to the common welfare. . . It follows that wild animals, except insofar as the Legislature may determine, are not the subject of private ownership. Regulations by way of permission of the right to hunt or take game, and restrictions as to the possession or disposal of game after it has been reduced to possession deprive no person of his property, <u>because one</u>

who takes or kills game had no previous right
of property in it. . ."   (Parenthetical expres-
sion added)

See, also, H. D. Dodgen, Executive Secretary vs.
Vincent Depuglio, decided by the Supreme Court of Texas
March 10, 1948.

The question, then, that you raise is whether
it is a reasonable game regulation to require that whole-
sale fur buyers purchase pelts only from licensed fur buy-
ers or licensed trappers, and to provide that any wholesale
fur buyer who is convicted of violating this provision shall,
in addition to the statutory penalty, forfeit his license
and shall not be permitted to obtain another license for a
year.

We shall be concerned only with the reasonable-
ness of the forfeiture provision with reference to the con-
stitutionality of the statute.

Since the State unquestionably can protect the
public's rights in wild game through its police power, it
can also license the right to deal in pelts.  38 C. J. S.
5.  If the State can license such activity, it can provide
for the automatic forfeiture or revocation of such license
if the end to be served is the protection of the game re-
sources of our State.  In requiring the purchase of pelts
only from licensed trappers or buyers, the Legislature was
concerned with the evil of trafficking in illicit or con-
traband pelts.  Statutory provision has been made as to
the conditions under which such fur-bearing animals may
be taken and there could be no greater deterrent to the
illegal taking of fur-bearing game than a safeguard against
its ready marketability.  Unquestionably a sound safeguard
is the statutory requirement that buyers be assured of the
authoritative sanction of those from whom pelts are pur-
chased.  Dodgen vs Depuglio, supra.

To facilitate the identification process, Art.
923qa, Sec. 4, V.P.C., has specifically required retail
and wholesale fur buyers to display publicly their licenses
in their places of business, or if they do not have a place
of business, to have their license on their person "when-
ever conducting such operations".  Unquestionably when a
retail fur buyer is selling pelts to a wholesale fur buyer
he is conducting the operations of his business in such a
fashion as would require him to exhibit his license or have
it on his person.  We do not believe it is unreasonable to

require the wholesale fur buyer to ascertain whether the person he is dealing with has a license, particularly in view of the requirement of public display or possession of the license by operators. The wholesaler is not being penalized for the dereliction of some other person; he is being penalized for his <u>own</u> dereliction, being the crime of purchasing pelts from an unauthorized trapper or buyer.

In your able brief, you have raised the question of "guilty knowledge" in connection with the criminal prosecution for the offense of dealing with an unlicensed person; that is, whether it must be proved that the wholesaler knew he was purchasing from an unlicensed trapper or buyer.

It is unquestionably true and has long been established that some criminal offenses require intent as an element of the offense, while other criminal offenses do not require an intent. The statute setting out the criminal offense is determinative in each instance in ascertaining whether a criminal intent is an essential element of that crime. Hughes v. State, 67 Tex. Crim. Rep. 333, 149 S. W. 173; Gray v. State, 77 Tex. Crim. Rep. 221, 178 S. W. 337; Hargrove v. United States, 67 F (2d) 820; 12 Tex. Jur. 262.

An offense prosecuted under Art. 923qa, V.P.C., is a criminal offense that does not require criminal intent as an essential element of the offense. We do think, however, that the facts you have presented raise a possible defense on the part of the wholesaler of mistake of fact, available under Art. 41, V.P.C., as follows:

"If a person laboring under a mistake as to a particular fact shall do an act which would otherwise be criminal he is guilty of no offense but the mistake of fact which would excuse must be such that the person so acting under a mistake would have been excusable had his conjecture as to the fact been correct, <u>and it must also be such mistake as does not arise from a want of proper care on the part of the person so acting</u>". (Emphasis added)

We are, of course, unable to say whether the wholesaler in your particular case exercised proper care to ascertain the facts. As to what would amount to proper care, this is a fact question to be determined in the light

of all the circumstances surrounding each individual case.

In connection with your inquiry, we wish also to point out that the forfeiture provision is not <u>direct-ory</u>, but is <u>mandatory</u>, as you have observed. The license is <u>automatically</u> suspended by reason of such conviction without any further action or judgment by the court being necessary. See Galloway v. State, 125 Tex. Cr. R. 524; 69 S. W. (2d) 89, holding that automatic forfeiture of <u>hunting</u> licenses upon conviction of violating any provis-ion of the game laws, as provided in Article 893, V.P.C., is constitutional.

## SUMMARY

Art. 923qa, Secs. 6 & 7, V. P. C., where-in provision is made for the forfeiture of a wholesale fur buyer's license upon conviction of purchasing pelts from an unlicensed trapper or fur buyer, is constitutional.

Very truly yours,

ATTORNEY GENERAL OF TEXAS

By

Dean J. Capp
Assistant

APPROVED:

FIRST ASSISTANT
ATTORNEY GENERAL.

DJC:rt:wb:jmc