**In re ORIENTAL REPUBLIC URUGUAY (Commando General De La Armada and Servicio De Bugues Auxiliares) as Owner and Operator of the M/V PRESIDENTE RIVERA for exoneration from or limitation of liability.**

Civ. A. No. 90–404 (SLR).

United States District Court,
D. Delaware.

April 2, 1993.

Francis J. Murphy, and Randall E. Robbins, of Ashby & Geddes, Wilmington, DE, for plaintiffs Oriental Republic Uruguay, Presidente Rivera, Servicio de Buques Auxiliares de La Armada and Captain Raul Di-Barrart.

Jeanne L. Langdon, and Keith A. Trostle, of the Delaware Dept. of Justice, Wilmington, DE, for claimant State of Delaware.

Michael B. McCauley, of Palmer, Biezup & Henderson, Wilmington, DE, and Kevin G. O'Donovan, of Palmer, Biezup & Henderson, Philadelphia, PA, for claimant Delaware Terminal Co.

Peter E. Hess, Wilmington, DE, for claimants I Did the Delaware, Old Seventh Street Boat Yard, Inc., Up the Creek Restaurant and Bar, Inc., and Phillips Holding Co., Ltd.

Jeffrey Weiner, of Law Offices of Jeffrey Weiner, Wilmington, DE, and Gerald J. Williams, Mark R. Cuker, and Alan H. Casper, of Williams & Cuker, Philadelphia, PA, for claimants Penns Grove New Jersey Residents.

Paul M. Lukoff, of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, DE, and Edward C. Radzik, and James P. Krauzlis, of Donovan, Parry, Walsh & Repetto, New York City, for claimant Petroleo Brasileiro, S.A.

Wanda Chin Monahan, of the Dept. of Law and Public Safety, Div. of Law, Trenton, NJ, and Martin J. McHugh, of the Hazardous Waste Litigation Section, Div. of Law, Trenton, NJ, for claimant State of N.J.

James S. Green, of Duane, Morris & Heckscher, Wilmington, DE, and Francis J. Deasey, of Deasey, Mahoney & Bender, Ltd., Philadelphia, PA, for claimant Sun Refining and Marketing Co.

Patricia C. Hannigan, of the U.S. Atty's Office, Wilmington, DE, Michael McIntyre, of the Environment & Natural Resources Div., EES, Washington, DC, and Peter F. Frost, Esquire, of the Torts Branch, Civil Division, Washington, DC, for claimant U.S. of America.

## MEMORANDUM OPINION

SUE L. ROBINSON, District Judge.

Before the Court is Limitation Plaintiff's motion for dismissal or partial summary as to the claims against it by private claimants Old Seventh Street Boatyard, Inc. and Up The Creek Restaurant, Inc. (collectively referred to herein as the "Boatyard and Restaurant" or "Claimants").

### Discussion

Limitation Plaintiff's first argument is that the claims of the Boatyard and Restaurant should be dismissed as a result of Claimants' failure to respond properly to discovery requests. (D.I. 177 at 8–19 (citing, *inter alia*, *Al Barnett & Son, Inc. v. Outboard Marine Corp.*, 611 F.2d 32 (3d Cir.1979))) While the Court recognizes that the harsh sanction of dismissal for failure to comply properly with the rules of discovery is appropriate under some circumstances, the Court declines to impose this most severe sanction in the matter at bar.[1]

█ As to the merits of the claims brought by the Boatyard and Restaurant, Limitation Plaintiff first contends, quite persuasively, that Claimants are not entitled to compensation for damages to and loss of use of natural resources because the State of Delaware has claimed recovery for said damages and because federal law precludes double recovery for the same natural resource loss. (D.I. 177 (citing, *inter alia*, 42 U.S.C. § 9601(16) and 43 C.F.R. § 11.15(a)(iii)))

The Boatyard and Restaurant concede the validity of this legal argument but contend that they are entitled to recovery because "the evidence is sufficient to establish that damages sought by the Claimants are ... separate and distinct" from the natural resource losses as to which the State of Delaware seeks recovery. (*See* D.I. 191 at 5) In support of this assertion, Claimants cite to the affidavit of Captain Dick Grant ("Grant"), owner of the Boatyard and Restaurant, wherein it is alleged that Grant "purchased several dozen ducks several years ago which [he] released into the marshlands surrounding the [Boatyard and Restaurant] facility" and which were killed by the PRESIDENTE RIVERA oil spill. (*See* D.I. 191 at 5; D.I. 178 at A–4) It appears that the "separate and distinct" natural resource damage allegedly suffered by Claimants is the alleged loss of these ducks.[2]

██ Limitation Plaintiff aptly responds to Claimants' contention by arguing that the Boatyard and Restaurant (and its owner, Grant) had no property interest in the "released" ducks and therefore have no standing to pursue this claim. The Court agrees. The common law rule regarding property interests in wild animals is well-established.

---

1. As discussed below, the Court will dismiss Claimants' claim for economic loss damages, in part due to Claimants' failure to produce through discovery or to introduce into the record any evidence of economic losses resulting directly from whatever property damage was sustained by Claimants as a result of the PRESIDENTE RIVERA oil spill.

2. Claimants assert as follows in their brief with respect to this issue:

   The Affidavit of [the Restaurant and Boatyard] owner Dick Grant describes the flock of ducks that he owned but released in the marshes which surround his property at the confluence of the Christina and Brandywine Rivers. Grant fed and cared for his flock and he and his patrons were shocked and deeply saddened by having to witness the slow and painful deaths of approximately 150 of his birds which was caused by the ingestion of toxic oil and the matting of their feathers which caused them to lose their insulating property. These birds were more akin to pets than to wildlife; their loss should be treated as oil-related damage to private property rather than natural resource losses, which are the domain of the governmental trustees. Thus, this claim should be recognized as legitimate by the Court as it does not constitute double recovery.

   (D.I. 191 at 5)

   Although the Court sympathizes with Claimants in regard to the death of the ducks, for reasons discussed herein the Court concludes that Claimants do not have standing to recover for the death of these birds.

As explained by the Supreme Court of Vermont in the following passage, the common rule is that a wild animal or animal *ferae naturae* is not the property of a private person unless that person rightfully maintains and retains possession and control, exclusive of others, over said animal:

> No person can acquire an absolute property in animals ferae naturae. The ownership of such animals is, at most, a qualified one. They belong to no persons in particular. As Blackstone says (2 Com. 394): "A man may, lastly, have a qualified property in animals ferae naturae * * *; that is, he may have the privilege of hunting, taking, and killing them, in exclusion of other persons. *Here he has a transient property in these animals, usually called game, so long as they continue within his liberty, and may restrain any stranger from taking them therein; but the instant they depart into any other liberty this qualified property ceases.*"

*State v. Niles,* 78 Vt. 266, 62 A. 795, 796 (1906) (emphasis added); *accord .Commonwealth v. Agway, Inc.,* 210 Pa.Super. 150, 152–53, 232 A.2d 69, 70 (Pa.Super.1967); *Pierson v. Post,* 3 Cranch 175 (N.Y. 1805); 4 Am.Jur.2d *Animals* § 15 (1962).[3]

■ In the case at bar, although Grant's allegation that he "purchased" these ducks is undisputed, it is undisputed as well that Grant "released" the ducks, which clearly are animals *ferae naturae*[4], "into the marshlands surrounding the [Boatyard and Restaurant] facility" several years prior to their alleged death. (*See* D.I. 178 at A–4) Thus, while Grant may have had a "qualified" property interest in these ducks at the time he acquired them, the instant he "released" them

back into the wild and "they depart[ed] into [another] liberty this qualified property cease[d]." *See State v. Niles, supra.* The Court accordingly concludes that Grant did not, at the time of their alleged death, have a property interest in the flock of ducks which he released into the marshlands and which allegedly were killed by the PRESIDENTE RIVERA oil spill. Limitation Plaintiff's motion for summary judgment as to this claim therefore will be granted.

The second general argument Limitation Plaintiff raises as to the merits of the claims asserted by the Boatyard and Restaurant concerns the extent to which Claimants are entitled to recover economic losses arising from the oil spill and the resulting closure of the Delaware, Christina and Brandywine rivers to navigation.

Before turning to the legal principles applicable here, it is useful to consider precisely what type of economic loss damages Claimants seek to recover. The gist of Claimants' economic loss claim is that the Boatyard and Restaurant lost substantial business as a result of the inability of boat owners to navigate and otherwise use these waters due to their closure by the Coast Guard. (*See* D.I. 191 at 5; D.I. 178 at A–4)[5] Claimants' economic loss claim thus arises not from economic damages resulting from any property damage which the Boatyard and Restaurant may have suffered as a result of the oil spill but rather arises from the loss of business which Claimants allegedly experienced as a result of the closure of the rivers to navigation and as a result of the oil spill in general. That is, Claimants allege their businesses lost customers because the oil spill and the resulting closure of the rivers prevented po-

---

3. The parties have not cited and the Court has not found any Delaware decisional authority addressing this well-settled common law principle, but the Court predicts that the Delaware Supreme Court would adopt this rule if it were presented with the issue at bar.

4. The term *"ferea naturae"* is defined as "[o]f a wild nature or disposition. Animals which are by nature wild are so designated, by way of distinction from such as are naturally tame, the latter being called *'domitae naturae.'"* Black's Law Dictionary 558 (5th ed. 1979).

5. Claimants assert the following with respect to this issue in their brief filed in response to Limitation Plaintiff's motion:
   > The second prong of the Limitation Plaintiff's summary judgment motion concerns the Claimants' alleged loss of use of the Delaware, Christina and Brandywine Rivers while their waters were fouled with the viscous oil and the Coast Guard had closed them to navigation. Dick Grant's Affidavit, supra. at ¶ 5, describes how the loss of use of these waters affected his business of providing a boat ramp for access to the rivers by recreational vessels.

   (D.I. 191 at 5)

tential customers from using Claimants' facilities or at least dissuaded any such customers from using their facilities. (*See* D.I. 178 at A–4)

■ Since the economic losses that Claimants allegedly suffered resulted from the oil spill generally and from the associated closure of the rivers to navigation, rather than from any property damage suffered by Claimants as a result of the spill, it is clear that recovery on this claim is precluded as a matter of law under this Court's Opinion of January 6, 1993, which represents the law of this case. In said Opinion, the Court interpreted the economic loss rule as set forth in the cases of *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290 (1927) and *Getty Refining and Marketing Company v. M/T FADI B*, 766 F.2d 829 (3d Cir.1985), as follows:

> [T]he Court holds that a plaintiff cannot recover economic loss damages in negligence under the physical property damage exception to the *Robins/FADI B* rule of limitation applicable in this circuit unless the plaintiff's economic loss damages derived directly from the physical property damage caused by the defendant's negligence.

(D.I. 158 at 13–14)

■ Although the economic loss rule typically is utilized so as to limit the ability of a party to recover economic losses arising from *existing* contractual obligations which result from another's negligence, the Court finds that the *Robins* rule of limitation applies with equal force with respect to economic losses arising from *potential* contractual relations that are impeded or interfered with as a result of another's negligence. In *FADI B*, 766 F.2d at 831–32, the Third Circuit quoted with approval section 766C of the Restatement (Second) of Torts, which reaffirms the *Robins* rule and articulates this rule of limitation in the following manner:

> One is not liable to another for pecuniary harm not deriving from physical harm to the other, if that harm results from the actor's negligently.
>
> (a) causing a third person not to perform a contract with the other, or

> (b) interfering with the other's performance of his contract or making the performance more expensive or burdensome, or
>
> (c) *interfering with the other's acquiring a contractual relation with a third person.*

(Emphasis supplied)

Numerous federal courts have applied this principle so as to preclude recovery for lost prospective trade in cases involving facts similar to those at bar. *See, e.g., Dick Meyers Towing Service, Inc. v. United States*, 577 F.2d 1023 (5th Cir.1978) (*Robins* rule precluded plaintiff towing company from recovering economic losses arising from defendant's interference with plaintiff's business expectancies in connection with defendant's negligent construction of lock which caused closure of river to navigation); *In re Complaint of Marine Navigation Sulphur Carriers, Inc.*, 507 F.Supp. 205 (E.D.Va.1980) (in action arising from defendant ship's collision with bridge that resulted in temporary closure thereof, court held that *Robins* rule precluded recovery by various parties seeking damages for loss of prospective trade, including proprietors of two historic houses who allegedly lost profits because the bridge's closure limited access to their properties); *Burgess v. M/V Tamano*, 370 F.Supp. 247 (D.Me.1973) (court dismissed economic loss claims brought by owners of beach area motels, restaurants and grocery stores whose business expectancies were harmed as a result of defendant's negligent discharge of 100,000 of oil into the waters of Casco Bay). Indeed, the Third Circuit's *FADI B* decision itself, which is binding on this Court, contains the following language indicating that the *Robins/FADI B* rule applies to financial harm resulting from lost prospective trade:

> [W]e will adhere to the rule defined by Justice Holmes in *Robins*, incorporated in the Restatement of Torts (Second) § 766C, and embraced by the leading commentators that where the [defendant's] negligence does not result in physical harm, thereby providing no basis for an independent tort, and the plaintiff suffers only pecuniary loss, he may not recover for the

loss of the financial benefits of a contract or *prospective trade.*

*MT FADI B,* 766 F.2d at 833 (emphasis added).

It is clear from the discussion above regarding the nature of Claimants' alleged economic losses that any such losses resulted from Limitation Plaintiff's discharge of oil into the Delaware River and the resulting closure of the river—not from any property damage which Claimants may have incurred. In other words, Claimants' economic losses resulted from Limitation Plaintiff's "negligently ... interfering with [Claimants'] acquiring ... contractual relations" with the various potential customers who presumably would have utilized the facilities of the Boatyard and Restaurant were it not for the PRESIDENTE RIVERA oil spill. Since Claimants do not allege that their economic losses resulted from whatever property damage may have been sustained by the Boatyard and Restaurant, the Court concludes that Claimants' economic loss damages are precluded by the *Robins/FADI B* economic loss rule.

██ It appears from the record that Claimants also seek damages pursuant 7 Del.C. § 6207(a)(6), which allows for recovery of "damages for economic loss, arising out of or directly resulting from oil pollution, [including claims] for ... [l]oss of profits or impairment of earning capacity due to injury or destruction of real or personal property or natural resources." Limitation Plaintiff seeks summary judgment as to this claim on two grounds.

Limitation Plaintiff first asserts that recovery by Claimants under section 6207(a)(6) is precluded due to Claimants' failure to provide any evidence of profit loss or "impairment of earning capacity" covered by this provision of the Delaware Oil Pollution Liability Act. The Court rejects this assertion since the affidavit of Captain Grant, when considered in a light most favorable to Claimants, arguably provides a factual basis for this claim. (*See* D.I. 178 at A–4, ¶ 5)

Limitation Plaintiff next contends that this claim must be dismissed as a matter of law on the ground that the *Robins/FADI B* rule

of limitation directly conflicts with Delaware law insofar as section 6207(a)(6) allows for recovery of economic damages and lost business expectancies arising from the PRESIDENTE RIVERA oil spill, though not deriving from any property damage Claimants may have sustained. Claimants do not dispute that the Supremacy Clause would preclude such a result, but instead contend that Limitation Plaintiff's constitutional argument has no merit because "the *Robins Dry Dock* rule is not applicable to the Claimants...." (D.I. 191 at 6) Since Claimants' contention that the *Robins* rule of limitation is inapplicable to their economic loss claim holds no merit, as discussed above, the Court must determine whether the Supremacy Clause applies here, as Claimants apparently concede, so as to preclude Claimants from seeking economic damages which are barred by the *Robins* rule of limitation as interpreted and applied in this Memorandum Opinion.

The Court notes in this regard a very recent district court opinion involving facts and legal issues strikingly similar to those at bar. *See In the Matter of the Complaint of Ballard Shipping Company,* 810 F.Supp. 359 (D.R.I.1993). *Ballard Shipping,* like the instant case, involved a limitation of liability action brought by the owner of a shipping vessel that spilled a substantial amount of oil into a navigable body of water. In its memorandum opinion cited above, the district court addressed the viability of claims raised by various private claimants, including "seafood dealers, tackle shop operators, restaurant owners and employees, a scuba equipment and canoe rental shop, and a variety of other shoreline businesses," for economic losses arising from the oil spill. In particular, the court dealt with the issue of whether application of a statutory provision of Rhode Island law, which allowed for recovery by such claimants and which directly conflicted with the *Robins* rule, was precluded by the Supremacy Clause.

The statute at issue there, much like § 6207 of the Delaware Oil Pollution Liability Act, "enable[d] claimants to recover for economic loss if they c[ould] 'demonstrate the loss of income or diminution of profit to a person or business as a result of damage to

the natural resources of the State of Rhode Island....'" *Ballard Shipping*, 810 F.Supp. at 364 (quoting R.I.Gen.Laws § 46–12.3–4(a)). Moreover, the statute specifically provided that "it shall not be necessary to prove that the loss was sustained as a result of physical injury to the person or damage to his or her property...." *Id.* Relying on *Askew v. American Waterways Operators, Inc.*, 411 U.S. 325, 93 S.Ct. 1590, 36 L.Ed.2d 280 (1973), the *Ballard Shipping* court opined that since the Rhode Island statute "specifically allows for recovery for purely economic injury and, thus, is squarely in conflict with an established rule of maritime law," [i.e., the *Robins* rule of limitation], ... "the state law must yield." *Ballard Shipping*, 810 F.Supp. at 365–66. The Court adopts this holding with respect to the identical issue presented here.[6]

The record indicates that Claimants suffered some property damage as a result of the PRESIDENTE RIVERA oil spill. (*See* D.I. 178 at A–3) Accordingly, Claimants' property damage claim will not be dismissed at this time.

### Conclusion

For the foregoing reasons, the Court concludes that Claimants are not entitled to collect damages in connection with the deaths of the ducks that allegedly resulted from the PRESIDENTE RIVERA oil spill. The Court also finds that Claimants' economic loss claim is precluded by the *Robins/FADI B* rule of limitation. Since the record contains evidence indicating that Claimants suffered cognizable property damage as a result of the oil spill, this claim will remain for resolution at trial.[7]

6. With respect to the effect, if any, of the recently-enacted Oil Pollution Act of 1990 on the issue at bar, the *Ballard Shipping* court noted as follows:

> Congress's recent enactment of the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. § 2701 et seq., which allows recovery for certain damages resulting from oil spills, including 'loss of profits or impairment of earning capacity,' 33 U.S.C. § 2702(b)(2), may permit application of the economic harm provisions of the Rhode Island statute in actions arising out of incidents occurring after August 18, 1990, the ef-

An Order consistent with this Memorandum Opinion shall issue.

fective date of the statute. The OPA, however, does not apply to this action, which arises out of an oil spill occurring in 1989.
810 F.Supp. at 365 n. 4. Likewise, although the OPA may permit recovery of economic loss arising from an oil spill under § 6207 of the Delaware Oil Pollution Liability Act, the OPA does not apply to the claims at bar, which arise from a 1989 oil spill.

7. Limitation Plaintiff's motion to exclude Claimants' use of certain evidence at trial will be denied as premature.